842 So.2d 432 (2003)
STATE of Louisiana
v.
Trenell HARRIS.
No. 2002-KA-2099.
Court of Appeal of Louisiana, Fourth Circuit.
March 5, 2003.
*433 Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Donna R. Andrieu, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Ike Spears, Spears & Spears, New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, and Judge MAX N. TOBIAS, Jr.).
Judge MAX N. TOBIAS, JR.
The defendant, Trenell Harris ("Harris"), was charged by bill of information on 12 March 2002 with aggravated battery, a violation of La. R.S. 14:34. Harris pleaded not guilty at her 22 March 2002 arraignment. On 17 April 2002, a six-person jury found Harris guilty of second-degree battery. On 1 May 2002, Harris was sentenced to two years at hard labor with *434 credit for time served. On 10 May 2002, Harris filed a motion to reconsider the sentence, which was denied, and a motion for appeal, which was granted.

STATEMENT OF FACTS
The victim, Sheena Palmer, testified that on 2 January 2002, she was employed as a shift manager at Church's Fried Chicken located at 7100 Downman Road. She stated that on that day Elvetta Raines and Harris were also working. Harris was also employed as a shift manager, but she was not the shift manager on duty at the time of the incident. According to Ms. Palmer, Harris was assigned to work the drive-through window for the day. A customer pulled up to the window, and Ms. Palmer asked Harris if she was working for the day. Harris responded by telling Ms. Palmer that she should take the customer's order, because she was not going to catch a cold for anyone.
Ms. Palmer testified that she then called the store manager to inform her of the situation. Ms. Palmer informed Harris that the store manager had instructed her to send her, Harris, home. Ms. Palmer further testified that she continued to talk on the telephone when Harris walked over to the fryer, removed some of the hot grease with a pot, threw the hot grease on her, jumped over the counter, and ran out of the store. Ms. Palmer put down the telephone and ran after Harris. Upon entering the store again Ms. Palmer telephoned the police, but before the police arrived she had a friend drive her to the hospital.
After being treated at Charity Hospital for third degree burns on her left arm, left side, back and neck, Ms. Palmer went to the Seventh District police station to report the incident. After giving her statement, a female officer photographed Ms. Palmer's injuries, with the bandages in place. Ms. Palmer also had her injuries photographed later that same day without the bandages.
Ms. Palmer testified that her injuries required two surgical procedures. In the first procedure, old skin was removed; in the second procedure, skin was grafted from her leg to cover her injuries.
Elvetta Raines testified that Harris and Ms. Palmer had an argument over who was going to work the drive-through window as she worked the front counter. Ms. Raines further testified that Ms. Palmer informed Harris that if she did not want to work she could go home. According to Ms. Raines, the two began to argue as she walked over to the lobby area of the restaurant. When Ms. Raines returned to the work area, she saw Harris initiate a pushing match. Ms. Raines testified that Harris then retrieved a pot, removed hot grease from the fryer, threw it on Ms. Palmer, and ran out of the store. Ms. Raines further testified that Ms. Palmer ran out of the store after Harris, then returned to the store to call the police.
Ms. Raines called her brother and asked him to drive Ms. Palmer to the hospital. Ms. Raines testified that later in the day she received a telephone call from a police officer asking for her version of the events of the incident.
Officer Tindell Murdock, of the New Orleans Police Department, testified that he responded to a call of an aggravated battery at Church's Fried Chicken. Because Ms. Palmer had already left the restaurant, Officer Murdock met Ms. Palmer at the Seventh District police station. Once at the station Officer Murdock took Ms. Palmer's statement. The statement recounted by the officer corroborated the version of the events given by Ms. Palmer in her testimony. Officer Murdock stated that he had a female officer photograph Ms. Palmer's injuries.
*435 Officer Murdock further testified that Harris also went to the Seventh District station to give her version of the events. Harris's version of the events conflicted with Ms. Palmer's. Officer Murdock testified that Harris alleged Ms. Palmer threw hot oil on her first and she responded by doing the same. Because the two versions of the story conflicted, Officer Murdock telephoned Ms. Raines to ask her version of the events. Ms. Raines corroborated Ms. Palmer's version of the story. Officer Murdock advised Harris of her rights, placed her under arrest, and transported her to Central Lockup.
Jerry Bennette, an assistant manager at Church's Fried Chicken on Downman Road, testified that on 2 January 2002, he was off duty and at home when he received a phone call about the incident between Ms. Palmer and Harris. When Mr. Bennette arrived at the store, he asked Ms. Palmer what happened, and she responded, "Look at me. What do you think happened?" Mr. Bennette then asked the cook what happened, and he said he was not in the store at the time because he had gone to McDonald's.
Mr. Bennette testified that he then closed the restaurant for a few hours to conduct an investigation. He said he observed grease on the back wall and side wall of the restaurant. He also observed grease in the parking lot, on Harris's vehicle and on Harris's jacket when she returned to the store. Mr. Bennette stated that he questioned the three employees in the store at the time of the incident, and Ms. Raines would not provide any information because she did not want to get involved.
Harris testified that she and Ms. Palmer were working together on 2 January 2002. She stated that as the shift began that morning Ms. Raines asked about the work assignments for the day, and Harris responded by saying she did not want to work the drive-through window because she had a cold. According to Harris, for most of the shift she worked the front counter. At some point during the shift Mr. Bennette called and asked Harris to recount the money in the store safe because Ms. Palmer found it was short of cash. After the call, a customer came to the drive-through window, and Ms. Palmer asked Harris to take the order. Harris told Ms. Palmer she had to take the order herself. Ms. Palmer then telephoned the store manager, and as she waited for the manager to answer the call, they continued to argue. Harris alleges Ms. Palmer put down the telephone receiver and approached her pointing her finger in her face. Harris further alleges that Ms. Palmer then walked over to the fryer, retrieved hot grease, and threw it on her. Harris alleges she responded in self-defense by pouring hot grease on Ms. Palmer. According to Harris, Ms. Palmer then chased her out of the store with more hot grease, and as she entered her vehicle Ms. Palmer poured the grease on her vehicle.
Harris testified that she then drove to her sister's home to call the police. Harris further testified that because the 911 operators sent the officer to the wrong address, she went to the Seventh District police station to report the incident. At the police station Harris gave a statement to Officer Murdock.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
Harris complains that the evidence was insufficient to support a conviction of second degree battery and that the State failed to negate self-defense.
When assessing the sufficiency of evidence to support a conviction, the appellate *436 court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Heck, 560 So.2d 611 (La.App. 4 Cir.1990), writ denied, 566 So.2d 395 (La.1990). The reviewing court must consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could not disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991).
In a second degree battery conviction the State is required to prove the offender committed a battery without the consent of the victim and that the perpetrator intentionally inflicted serious bodily injury. La. R.S. 14:34.1. The offense requires proof of a specific intent to inflict "serious bodily harm." State v. Welch, 615 So.2d 300, 302 (La.1993)(citing State v. Fuller, 414 So.2d 306 (La.1982)). "Serious bodily injury" is defined as injury which involves "unconsciousness, extreme physical pain or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." La. R.S. 14:34.1. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Therefore, the elements of second degree battery are: (1) the intentional use of force or violence upon the person of another, (2) without the consent of the victim, (3) when the offender has the specific intent to inflict serious bodily injury. State v. Legendre, 522 So.2d 1249, 1251 (La.App. 4 Cir. 1988).
The term "extreme physical pain" as used in the statute refers to "a condition which most people of common intelligence can understand; it is considered subjective in nature and susceptible to interpretation." Legendre, 522 So.2d at 1250 (quoting State v. Thompson, 399 So.2d 1161, 1168 (La.1981)).
La. R.S. 14:34.1 provides in part:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
In the instant case, viewing the evidence in the light most favorable to prosecution, the jury heard how Harris retrieved hot grease from a fryer and threw it on Ms. Palmer, causing third degree burns. Therefore, the evidence was sufficient to support Harris's conviction.
Harris further complains that the State failed to negate self-defense. The Fifth Circuit in State v. Barnes, 98-436, p. 14 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1104, citing State v. Freeman, 427 So.2d 1161 (La.1983) found:
[I]n the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary. Thus, since the subjective inquiry is required, it is the defendant who would be in a better position to know those subjective facts. In fairness to the state this court believes that it would be placing an onerous burden on the state to disprove subjective influences on the defendant as it relates to self-defense or defense of another especially *437 since the defendant has these facts at his disposal to produce to the court. [Citations omitted.]
This court may not over turn the jury's evaluation of the credibility of Harris in her assertion of facts supporting her claim of self-defense. The jury in the instant case heard the testimony of Harris and Ms. Palmer, and obviously found Ms. Palmer to be more credible. State v. Mussall, supra. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Harris complains that the trial court erred in failing to instruct the jury that they had the right to disbelieve all or part of a witness's testimony if the jury felt the witness lied on the stand.
La.C.Cr.P. art. 841 provides in part:
An irregularity of error cannot be availed of after verdict unless it was objected to at the time of occurrence.
Harris argues the inconsistencies in Ms. Palmer's direct and cross examination testimony show she lied on the witness stand, and if the judge had instructed the jury to disbelieve all or part of a witness's testimony, it could have made the difference between conviction and acquittal. However, defense counsel was present during the trial judge's instructions to the jury and failed to object to them at the time they were given. Therefore, Harris has failed to preserve this error for appellate review. La.C.Cr.P. art. 841. This assignment of error is without merit

ASSIGNMENT OF ERROR NUMBER 3
Harris complains that the sentence imposed by the trial court was excessive for a first time felony offender.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983).
If adequate compliance with article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his or her case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Walker, 96-112 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, 535, citing State v. Howard, 414 So.2d 1210 (La.1982).
La. R.S. 14:34.1 provides in part:
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both
In State v. Abercrumbia, 412 So.2d 1027 (1982), the Supreme Court found the sentence of three years for a first time felony *438 offender convicted of second degree battery to be excessive. The crime involved an altercation over money at a game of craps, when the defendant attacked the victim with a board, causing head, neck and arm injuries, together with a cut. The Court took into consideration that the crime was committed by a defendant with a steady work history, and no prior offenses. Additionally, the Court found there was no factual basis that there would be "undue risk" that the defendant would commit another crime if his sentence was suspended or that the defendant would be a poor probation risk.
In the instant case, Harris is a first time offender with no prior criminal record. She was gainfully employed at the time of the incident. Harris engaged in a pushing match with the victim. The victim, a woman co-employee, was on the telephone with the store manager about what to do, and the store manager advised the victim to tell Harris to go home. Harris took hot grease from a fryer, threw it on the victim, and fled the store. The victim suffered third degree burns on her left arm, side, back, and neck, which required skin grafts in an attempt to cure her. During the trial, the jury and therefore the trial judge observed the resulting scars to the victim. A reasonable person could expect and should know that hot grease from a fryer can cause severe, disabling injuries and permanent scarring of the victim. Hot oil might even cause death from infections related to the burn. The injury was to a co-worker. We, find, therefore, that Abercrumbia is distinguishable and that a sentence of two years, which is 40% of the maximum sentence of five years, for a first-time felony offender under the facts of this case does not constitute an abuse of discretion of the trial judge. The record reflects that the trial court considered sentencing guidelines and noted the particular circumstances of this case and this defendant. The sentence does not reflect the needless and purposeful imposition of pain, and the sentence is not grossly out of proportion to the severity of the crime. The sentence is not too severe in light of this defendant and the circumstances of her case. The defendant has shown no special circumstances to establish that the punishment is excessive in her case.
We therefore find no merit to this assignment.

CONCLUSION
Accordingly, Harris's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.