868 So.2d 775 (2003)
STATE of Louisiana
v.
Arlen BROWN.
No. 2003 KA 1076.
Court of Appeal of Louisiana, First Circuit.
December 31, 2003.
*777 Anthony G. Falterman, District Attorney, Gonzales, by Donald D. Candell, Assistant District Attorney, for Appellee State of Louisiana.
Patti Durio Hatch, Baton Rouge, for Appellant Arlen Brown.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
CARTER, C.J.
The defendant, Arlen Brown, was charged by grand jury indictment with: three counts of second-degree kidnapping, a violation of LSA-R.S. 14:44.1; two counts of aggravated crime against nature, a violation of LSA-R.S. 14:89.1; one count of attempted aggravated rape, a violation of LSA-R.S. 14:27 & 42; and one count of attempted second-degree murder, a violation of LSA-R.S. 14:27 & 30.1. The offenses involved three separate victims and were alleged to have occurred on three different dates. On the morning of trial, the State amended the bill of indictment to delete one count of second-degree kidnapping and one count of aggravated crime against nature. The remaining counts involved only two victims, K.S. and P.T. Defendant pled not guilty to all counts.
After a trial by jury, defendant was found guilty as charged on one count of *778 second-degree kidnapping and one count of attempted second-degree murder with respect to K.S. He was found guilty as charged on one count of aggravated crime against nature with respect to P.T. Defendant was acquitted on one count of seconddegree kidnapping and one count of attempted aggravated rape with respect to P.T. He filed a motion for new trial, which was denied. He was sentenced to twentyfive years' imprisonment for his conviction of second-degree kidnapping; to five years' imprisonment for his conviction of aggravated crime against nature; and to twenty-five years' imprisonment for the crime of attempted second-degree murder. All sentences were imposed at hard labor and without benefit of parole, probation, or suspension of sentence. The trial judge ordered all sentences to run concurrently.
On appeal, defendant relies on the following assignments of error for reversal of his convictions and sentences:
1. The evidence was insufficient to support the verdict of attempted second-degree murder of K.S.
2. The evidence was insufficient to support the verdict of second-degree kidnapping of K.S.
3. The evidence was insufficient to support the verdict of aggravated crime against nature as to P.T.
4. The trial court erred in denying defendant's motion for new trial.
For the following reasons, we affirm defendant's convictions and sentences.

FACTS
This case involves offenses that occurred on two different dates and with respect to two different victims. P.T., the first victim, testified that at about 9:30 p.m. on January 4, 1998, she was at Church's Fried Chicken on Scenic Highway in Baton Rouge. Defendant, who was stopped nearby, called her over to his truck. He asked her if she wanted to go for a ride with him, and she agreed to do so. She saw he had a large gun in his lap, but she thought nothing of it, because she knew many people who carried weapons in that area of town. According to P.T., defendant was nice looking and had a nice vehicle. She hoped a relationship might develop with him.
As defendant drove an increasing distance from the area where they began their ride, P.T. became concerned and asked to be taken home. Her concern increased as he passed up exit after exit on Interstate 10. He insisted she keep her head down in the vehicle so she would not be seen. Defendant eventually exited I-10 in Ascension Parish and stopped on a small dirt road. He accidentally backed into the tail light of an empty truck parked at a nearby business. The two got out to look at the damage. Then defendant told P.T. to take her clothes off, grabbed her by the hair, ordered her to listen to him, and told her he had just gotten out of prison for murdering someone.
P.T. testified that she complied with the defendant's demands because she was afraid of him and his gun. Defendant attempted to have sex with her against her will, but he was unable to complete the act. All the while, his weapon was within reach. Then he ordered P.T. back into the truck and forced her to perform oral sex on him. He threatened to kill her if she did not satisfy his demands. Afterward, he ordered her out of the truck and onto her knees. He initially pointed his gun at the back of her head and threatened to "blow [her] brains out." Then he let her get up and told her to run. When she heard the truck pull away from the area, P.T. went to the road and found a service station. There she asked an attendant to telephone the police and report that she had been kidnapped.
*779 After investigating this incident and a subsequent similar incident, police officers compiled a photographic lineup, and P.T. pointed defendant out as her assailant. She also identified him in court as the man who forced her to go to Ascension Parish with him against her will. P.T. insisted at trial that she had not wanted to have sex with defendant. She admitted during cross examination that she had "hustled" sex for money in the past, but she insisted such was not her intention that night with this man and she did not ask him for money.
K.S., the second victim, testified that at about 3:00 a.m. on February 1, 1998, she spotted the defendant at a car wash on Plank Road in Baton Rouge. She admitted she was "dating" that night to make money to get drugs. When the defendant approached her, she told him what she would charge to have sex with him, and she willingly got into his truck to go to a place where they could consummate their transaction.
Defendant got on I-10 eastbound, over K.S.'s objection. She did not want to leave her "turf" where she felt relatively safe. She asked defendant to take her back to her area. He refused and proceeded to Prairieville. Defendant was going too fast for her to jump out of his truck, and she repeatedly asked him to return her to North Baton Rouge. Defendant got off I-10 and proceeded to a small dirt road. When they stopped, he pulled a gun out and ordered K.S. to undress.
At this point, she tried to figure out how to escape. She told defendant she had to go to the bathroom. Just before she got out of the truck, defendant said, "Bitch, if you run, I'm going to kill you." K.S. jumped out of the vehicle and ran behind some other trucks parked nearby. Defendant then fired his gun at her and missed. He continued firing and eventually hit her in the arm, but she was able to hide until he left the area.
K.S. asked for assistance from residents in the area, who called the police to the scene. She helped generate a composite sketch and eventually picked defendant out of a photographic lineup. She took police to the scene of the crime and described defendant's vehicle as a dark truck with a gray interior.
On cross examination, K.S. admitted previous convictions for prostitution. She also admitted she had smoked cocaine in defendant's truck. According to K.S., she finished a small amount of cocaine in a cocaine pipe shortly after she got on the road with defendant. She insisted she was not high when they stopped in Prairieville and denied having a switchblade with her that evening.
Neither P.T. nor K.S. had any idea of the identity or occupation of the man they accused as their assailant. Detective Knoll King, Jr., of the Ascension Parish Sheriff's Office investigated both incidents. After receiving P.T.'s report, he found evidence of damage to the front of an 18-wheel truck at the crime scene, just as P.T. had described. In addition, he found part of a red tail light suspected to belong to the perpetrator's truck. The tail light was identified as coming from a Dodge pickup truck of the 1994 to 1998 series.
Detective King also took the report from K.S., who took him to the same crime scene that P.T. had described. There, he recovered five spent .40-caliber shell casings. One was recovered from the area where the perpetrator appeared to have parked. A blood trail began about 60 to 70 feet from that location. The other four spent casings were recovered from under a large white truck and a tractor-trailer rig where K.S. had sought cover. The spent casings were found within 10 feet of each *780 other. Based on the evidence collected and victim accounts, investigating officers felt the same perpetrator had committed both offenses.
In the course of his investigation, Detective King contacted auto dealerships. A sales representative at a nearby dealership recalled selling a left rear tail light to a man in a black Dodge truck that had a Marine Corps license plate. Further information led officers to an apartment complex in Gonzales, where a black Dodge truck with gray interior was parked. It had left rear damage and a Marine Corps license plate. The truck belonged to defendant.
Detective King then discovered defendant was a Gonzales police officer who had been issued a .40-caliber Glock weapon. It fired the same caliber bullets as those used at the crime scene. The victims identified defendant from photographic lineups, and officers obtained an arrest warrant and search warrants. Defendant was located and consented to a search of his truck and apartment. A semi-automatic gun was found at his residence with .40-caliber Winchester bullets matching those found at the scene. Officers also found ostrich skin cowboy boots that matched the victims' descriptions of those worn by their assailant. A work schedule was obtained showing defendant was off duty at the time of both crimes. Forensic scientist Patrick Lane confirmed at trial that each of the five shell casings found at the crime scene came from defendant's service weapon.
After being given his Miranda rights, defendant was questioned by officers. Initially, he claimed the damage to his truck had occurred six months before on a fishing trip. He denied ever carrying his duty weapon when not on duty. Yet, he indicated the last time it was fired was six months before on the fishing trip. Defendant continually denied involvement with the two women who accused him. Eventually, however, he admitted taking P.T. and K.S. to the Prairieville site. But he gave accounts radically different from the stories told by the two women.
Defendant claimed P.T. and K.S. willingly traveled with him to Ascension Parish to have oral sex with him in exchange for money. Defendant indicated P.T. had performed consensual oral sex on him while they were en route. After stopping in Prairieville, she continued. He then offered to pay her five dollars for her services, even though he admitted they had agreed on a ten-dollar payment. When P.T. complained about the payment, he made her get out of his truck and paid her nothing. Defendant described standing at the back of his truck to conceal his license plate and ordering P.T. to go behind some buildings so she would not see the license plate when he drove away from the scene. Although he admitted his gun was in the car, he denied ever pulling it out in P.T.'s presence. He also denied ever attempting to have sexual intercourse with her.
Defendant similarly admitted meeting K.S. and agreeing on a price for oral sex, after which she willingly went with him to Prairieville. He claimed when they got there, she started to smoke cocaine, and he objected. According to defendant, she was under the influence of drugs, and he ordered her out of his truck. K.S. refused to get out of the vehicle and pulled a switchblade out of her purse. He then pushed her out of the truck onto the ground, but she got up and kept coming at him with the switchblade.
Defendant testified he got out of the truck and pulled his gun to frighten K.S. He shot over her head several times, but she continued to advance. Finally he aimed closer, still intending to scare her, but accidentally hitting her. According to *781 defendant, he did not know he had shot K.S. when he left the scene. Defendant contended the two women made up their stories against him, because they were angry about not getting paid.
At the conclusion of trial, the jury found defendant guilty of the second-degree kidnapping of K.S., guilty of the attempted second-degree murder of K.S., and guilty of aggravated crime against nature with respect to P.T. The jury acquitted defendant of the charges of second-degree kidnapping and attempted aggravated rape of P.T. On appeal, defendant argues the evidence presented by the State was insufficient to support his convictions, and the trial court should have granted his motion for new trial for that reason.

SUFFICIENCY OF THE EVIDENCE
The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and defendant's identity as perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1 Cir.1984). When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1 Cir.), writ denied, 532 So.2d 130 (La.1988). When a case involves circumstantial evidence, however, and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant argues there was insufficient evidence adduced to support his conviction of the attempted second-degree murder of K.S.[1] Louisiana Revised Statute 14:30.1(A)(1) defines second-degree murder, in pertinent part, as the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. Louisiana Revised Statute 14:27 provides, in pertinent part, that any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended. It is immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Although the statute for the completed crime of second-degree murder allows for a conviction based on specific intent to kill or to inflict great bodily harm, attempted second-degree murder requires specific intent to kill. State v. Bishop, 01-2548 (La.1/14/03), 835 So.2d 434, *782 437. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126, 1127 (La.1982). The trier of fact determines whether the requisite intent is present in a criminal case. State v. Huizar, 414 So.2d 741, 751 (La.1982).
In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the defendant's guilt beyond a reasonable doubt as to every element of the offense. Id. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ford, 28,724 (La.App. 2 Cir. 10/30/96), 682 So.2d 847, 849-850,writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.[2]
In this case, defendant claimed his actions were justified and he shot at K.S. in self-defense. The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. LSA-R.S. 14:18. In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Navarre, 498 So.2d 249, 252-253 (La.App. 1 Cir.1986).
Louisiana law is unclear as to who has the burden of proving self-defense in a non-homicide case. See State v. Freeman, 427 So.2d 1161, 1163 (La.1983).[3] In previous cases dealing with this issue, we have analyzed the evidence under both standards of review; namely, whether the defendant proved self-defense by a preponderance of the evidence or whether the State proved beyond a reasonable doubt that the defendant did not act in selfdefense. See State v. Willis, 591 So.2d 365, 370-372 (La.App. 1 Cir.1991), writ denied, 594 So.2d 1316 (La.1992); State v. Aldridge, 450 So.2d 1057, 1059-1060 (La. App. 1 Cir.1984).[4] Similarly, in the instant *783 case, we need not decide the issue of who has the burden of proving or disproving self-defense because under either standard the evidence sufficiently established defendant did not act in self-defense.
K.S. testified that, after parking in a deserted spot in Prairieville, defendant suddenly pulled a gun from between his legs, pointed it at her face, and ordered her to undress. She was frightened and decided to try to escape by pretending she wanted to get out of the truck to go to the bathroom. Defendant threatened: "Bitch, if you run, I'm going to kill you." Nevertheless, K.S. hopped out and ran between two trucks parked nearby. At that point, K.S. testified defendant fired at her and missed.
As she was running away, he came around his truck and fired several more times. When he fired these shots, she was quite a distance from him. She slipped down in wet mud and grass several times as he was firing. Each time, she got up and kept running. A bullet from defendant's gun struck K.S. in her left arm as she continued to run away. A blood trail began about 60 to 70 feet from where his truck was parked.
Defendant's version of the events was entirely different. Although he admitted at trial he was at the Prairieville location with K.S., he denied that he threatened her or intended to kill her. He claimed he shot at K.S. in self-defense, intending only to scare her, because she slashed at him with a switchblade in a drug-induced craze. Defendant described firing all the shots at close range, while he was backing away from K.S., right after he got out of the driver's side of the truck as K.S. continued to advance toward him, crawling across the seats of the truck to get at him.
At other times during his testimony, defendant indicated the shots were fired when K.S. was outside of the truck. Since he testified he had already pushed her out of the passenger side when he exited the driver's side, he would have had to go around the truck to shoot at K.S. if she was outside of the vehicle, a scenario inconsistent with his testimony that he was backing up as she advanced toward him. Defendant at no time suggested that K.S. traveled around the truck to get to him.
Alternatively, if K.S. scrambled across the inside of the truck toward him as he fired, all of the spent shell casings would likely have been found near the truck. Defendant acknowledged he weighed about 230 pounds at the time and K.S. appeared to weigh about 120 pounds. Yet, defendant claimed he did not think to try to disarm K.S. because she was "out of control."
In comparison to defendant's testimony, K.S.'s trial testimony was internally consistent and was not at variance with the physical evidence found at the scene of the crime. The jurors, who had an opportunity to see and hear the witnesses, were entitled to accept K.S.'s testimony as true and to reject defendant's account. Accepting K.S.'s testimony that defendant told her he would kill her if she ran from him, and then fired multiple shots at her as she tried to escape, finally wounding her in the arm, it was entirely reasonable for the jurors to conclude defendant intended to make good on his threat to kill her.
The jurors were likewise reasonable in believing that K.S. never threatened defendant with a switchblade or did not present a threat sufficient to justify defendant's firing a gun at her. The jurors evidently rejected defendant's argument that his actions were justified. We have no trouble concluding the State presented sufficient evidence to prove each element of the offense of attempted second-degree murder beyond a reasonable doubt and to *784 the exclusion of every reasonable hypothesis of innocence. Moreover, when all the evidence is viewed in the light most favorable to the State, any rational trier of fact could have concluded beyond a reasonable doubt that defendant's conduct was not in self-defense.[5] There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendant claims there was insufficient evidence presented to support his conviction for the second-degree kidnapping of K.S. He argues K.S.'s testimony is suspect, and the only reason she was injured was because she attacked him with a switchblade. We do not agree.
Second-degree kidnapping, is defined, in pertinent part, as the forcible seizing and carrying of any person from one place to another, or the imprisoning or forcible secreting of any person, wherein the victim is physically injured. LSA-R.S. 14:44.1(A)(3) & (B)(1), (3). This is not a case of circumstantial evidence. Direct evidence in the form of K.S.'s testimony, as well as the defendant's, established that K.S. was physically injured when shot by the defendant, proving the element of the offense required by LSA-R.S. 14:44.1(A)(3). The jury clearly did not accept defendant's testimony that he fired at K.S. only because she was threatening him with a switchblade. K.S. denied having a switchblade at all, and the jury was entitled to accept her testimony as true.
The jury was also entitled to believe K.S.'s testimony that, although she initially agreed to get into defendant's truck, she did not wish to leave the North Baton Rouge area. K.S. was steadfast in her testimony that defendant took her to Ascension Parish against her will, under circumstances that prevented her from exiting the moving vehicle. Thus, there was ample evidence adduced to establish that defendant forcibly carried K.S. from one place to another. See State v. Davies, 35,783 (La.App. 2 Cir. 4/5/02), 813 So.2d 1262, 1266-1267, writ denied, 02-1564 (La.5/9/03), 843 So.2d 389. After a thorough review of the record, we are satisfied the State presented sufficient evidence to prove each element of the offense of second-degree kidnapping and defendant's identity as the perpetrator of the offense beyond a reasonable doubt.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, defendant challenges the sufficiency of the evidence to support his conviction for committing an aggravated crime against nature as to P.T. He argues that, since the jury acquitted him of the second-degree kidnapping and attempted aggravated rape of P.T., conviction on this charge was inconsistent and demonstrated the jury's determination that P.T. was not credible.
A crime against nature is defined, in pertinent part, as the unnatural carnal copulation by a human being with another of the same sex or opposite sex. Emission *785 is not necessary, and when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime. LSA-R.S. 14:89(A)(1). A crime against nature is considered aggravated when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. LSA-R.S. 14:89.1(A)(3).
At trial, P.T. testified that when defendant ordered her to take her clothes off in Prairieville, she was frightened. She believed defendant might kill her, because he told her he had just gotten out of prison for murdering someone. After unsuccessfully attempting sexual intercourse, with his gun at all times within reach, defendant told P.T. to get back into his truck and ordered her to perform oral sex on him. When she hesitated, he grabbed her head and forced her to do his bidding. He threatened to kill her if she did not comply to his satisfaction. At trial, defendant did not dispute that P.T. performed oral sex on him on the evening in question. Indeed, he testified at trial that she performed oral sex both en route to Prairieville and after they arrived there. Defendant also admitted he had a gun with him in a side compartment on the door of his truck.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Gordon, 582 So.2d 285, 292 (La.App. 1 Cir.1991). In returning a guilty verdict of aggravated crime against nature, the jurors obviously believed P.T. and discounted the defendant's self-serving testimony on the issue of whether she was forced to perform oral sex and prevented from resisting because defendant was armed with a dangerous weapon. The credibility of the witnesses' testimony is a matter of the weight of the evidence. A determination of the weight to be given the evidence is a question of fact for the trier of fact and is not subject to appellate review. State v. Tate, 506 So.2d 546, 551 (La.App. 1 Cir.), writ denied, 511 So.2d 1152 (La.1987).
Our review of the record satisfies us that, viewing all of the evidence in the light most favorable to the State, any rational trier of fact could have concluded the State proved that defendant committed the crime of aggravated crime against nature beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, defendant contends the trial court erred in denying his motion for new trial. He argues the trial court abused its discretion in denying the motion, which was based on the same arguments of insufficiency of the evidence made in defendant's other assignments of error.
Under LSA-C.Cr.P. art. 851, in ruling on a motion for new trial, the trial court can consider only the weight of the evidence. The court makes a factual review of the evidence as a thirteenth juror. State v. Gaines, 633 So.2d 293, 298 (La.App. 1 Cir.1993), writ denied, 93-3164 (La.3/11/94), 634 So.2d 839. An appellate court, on the other hand, is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely within the trier of fact's sound discretion. State v. Azema, 633 So.2d 723, 727 (La.App. 1 Cir.1993), writ denied, 94-0141 (La.4/29/94), 637 So.2d 460.
We have previously concluded the State presented sufficient evidence to support each of defendant's convictions. Accordingly, there is no indication the trial court *786 abused its sound discretion by denying defendant's motion for new trial. Thus, we find no merit in this assignment of error.

PATENT ERROR
In reviewing the record for patent error, we have discovered the trial court did not wait the required twenty-four hours after denial of defendant's motion for new trial before imposing sentence, nor did defendant waive the waiting period. See LSA-C.Cr.P. art. 873. Thus, the court erred when it sentenced defendant within twenty-four hours after denial of the motion. However, because defendant does not raise this issue on appeal and has not challenged the sentences on appeal, the error is not reversible unless defendant can show he was prejudiced. See State v. Augustine, 555 So.2d 1331, 1333-1334 (La. 1990); State v. Claxton, 603 So.2d 247, 250 (La.App. 1 Cir.1992). On appeal, defendant has not cited any prejudice resulting from the court's failure to delay sentencing, nor has defendant even noted this as error. We have reviewed the record and find no indication defendant was prejudiced by the error. Thus, the error is not reversible.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The indictment filed by the State charged defendant generally with attempted seconddegree murder. It did not specify whether the State intended to prove that defendant had specific intent to kill K.S. or that he attempted to kill her while committing or attempting to commit an enumerated felony. Because the only enumerated felony involved was second-degree kidnapping, of which defendant was also found guilty, we review the conviction only as a specific intent crime. Since the evidence supported the finding that defendant had the specific intent to kill K.S., and the trial court charged the jury regarding specific intent, we need not consider other theories. Compare State v. Davies, 35,783 (La.App. 2 Cir. 4/5/02), 813 So.2d 1262, 1267-1269, writ denied, 02-1564 (La.5/9/03), 843 So.2d 389.
[2] Defendant argues in brief to this court that the trial court's instructions to the jury regarding the attempted second-degree murder charge were confusing. However, defendant made no contemporaneous objection to the jury charges at trial. Thus, any issue regarding the jury charges is not properly preserved for appellate review. See LSA-C.Cr.P. arts. 801 & 841.
[3] In Freeman, 427 So.2d at 1163, the Louisiana Supreme Court indicated, in dicta, that the defendant in a non-homicide case may have the burden of proving self-defense by a preponderance of the evidence. Several cases decided thereafter have agreed with that view. See State v. Harris, 02-2099 (La. App. 4 Cir. 3/5/03), 842 So.2d 432, 436-437; State v. McClure, 34,880 (La.App. 2 Cir. 8/22/01), 793 So.2d 454, 457; State v. Rainey, 98-0436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1103-1105, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28; State v. Perkins, 527 So.2d 48, 50 (La.App. 3 Cir.1988); State v. Mason, 499 So.2d 551, 555 (La.App. 2 Cir.1986); State v. Barnes, 491 So.2d 42, 47 (La.App. 5 Cir.1986).
[4] Other courts have also utilized this approach and analyzed the evidence under both standards. See State v. Martin, 520 So.2d 1079, 1080 (La.App. 3 Cir.1987); State v. Agnelly, 515 So.2d 821, 823 (La.App. 5 Cir. 1987); State v. Zeno, 469 So.2d 337, 340 (La.App. 2 Cir.), writ denied, 474 So.2d 1303 (La.1985).
[5] Defendant argues in brief that the prosecutor conceded to the jury that there were problems with the State's evidence on this charge. In closing, the prosecutor informed the jurors that the evening before, during an aborted effort to recreate the crime for the jury at the scene, K.S. had indicated that defendant's words were, "Bitch, if you run, I'll shoot you," as opposed to her prior statement, "Bitch, if you run, I'll kill you." The prosecutor pointed out this variance, but advised the jury that it was up to them to determine if defendant was guilty of attempted seconddegree murder. We cannot say the jury erred in concluding defendant had the requisite specific intent based on the evidence adduced at trial.