952 So.2d 112 (2006)
STATE of Louisiana
v.
Derick P. PRICE.
No. 2005 KA 2514.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*114 Hon. Charles C. Foti, Jr., Attorney General, Kristi D. Hagood, Assistant Attorney General, Baton Rouge, Counsel for Appellee State of Louisiana.
M. Michele Fournet, Baton Rouge, Counsel for Defendant/Appellant Derek P. Price.
Before: CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES and WELCH, JJ.
KUHN, J.
The defendant, Derek P. Price,[1] was indicted by a grand jury for vehicular homicide, a violation of La. R.S. 14:32.1. With counsel present, the defendant entered a plea of not guilty. Following a jury trial, the defendant was found guilty as charged. The defendant filed motions for post-verdict judgment of acquittal and new trial, which were denied. The defendant was sentenced to seven years at hard labor, with the first year of the sentence to be served without benefit of probation, parole, or suspension of sentence. The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, asserting five assignments of error. We affirm the conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND
The testimony of several witnesses at trial established that at about 2:10 a.m. on *115 March 9, 2003, the defendant, after drinking at a nightclub in Chauvin, Terrebonne Parish, drove his truck on La. Highway 56, lost control, and wrecked. Brittany Porche, the passenger in the defendant's pickup truck, was ejected from the truck and died shortly thereafter from her injuries.
Late March 8 and into the early morning of March 9, 2003, a group of friends were drinking at Club Outrageous in Chauvin. Among this group were the defendant, Porche, Kenny Luke, Douglas Luke, Skyla Bouquet, Jake Peltier, Paul Babin, Paul Domangue, and Kayla Britt. Kenny Luke, Douglas Luke, Peltier, Domangue, and Babin all testified that they saw the defendant drinking at the club. When the club closed at 2:00 a.m., the group gathered in the parking lot across the street. While in their respective vehicles, the defendant and Peltier began "brake-talking."[2] Kenny Luke was in the back of the defendant's truck while the defendant was "brake-talking." Douglas Luke, Kenny's older brother, testified that he pulled Kenny out of the defendant's truck because he did not think that the defendant was fit to drive.
Eric Dumond was driving past Club Outrageous with Jaclyn Duncan and Shaun Lassere. According to the testimony of these three witnesses, they saw a truck do a "doughnut" as it was pulling onto the highway. The truck got directly behind Dumond and followed him. Shortly thereafter, the truck passed Dumond. As the truck was passing, it continued to veer to the left. The truck went off the road, hit a culvert, became airborne, hit a telephone pole, and flipped several times before coming to rest on its side.
Mathew Chatagnier testified that he had not been at the club that night, but stopped by, while on his way to work, to see his girlfriend in the parking lot. Chatagnier saw a truck "brake-talking." He noticed there was a female passenger in the truck. Later, when he was driving down the highway, he heard a loud crack and then saw a truck on his left flipping past him. He went to the scene of the accident and saw a male and female lying on the road and called 911.
Joey Lirette testified that he was working at the club that night as a deejay and that he saw a truck in the parking lot spinning its tires and doing a "doughnut." When the truck got on the road, Lirette saw the truck do another "doughnut" and after almost going into the ditch, the truck "took off down the road." A few minutes later, Lirette came upon the scene of the accident. Lirette testified that the wrecked truck was the same truck he saw spinning its tires and doing "doughnuts."
Porche was supposed to ride home with Babin, but decided to ride with the defendant because the defendant was driving alone. Porche also told Douglas Luke that she was going to ride with the defendant. Domangue and Chatagnier testified that they saw a female in the passenger's seat of the defendant's truck before he left, but could not identify her.
Joshua Rodrigue testified that he stopped by the club around 1:00 a.m. and left about a half-hour later because Troy, the friend he was riding with, had to leave. Rodrigue planned on returning to the club to meet his friends, including the defendant, who was one of his best friends. As Rodrigue was driving back to the club, he received a phone call from Porche, who was using the defendant's cell phone. Rodrigue testified that Porche was nervous and frantic during the call. Porche told *116 Rodrigue that the defendant was "driving messed up" and that she was scared and she wanted the defendant to pull over. Rodrigue told her to tell the defendant to pull over and that he (Rodrigue) would come to pick her up. Rodrigue heard Porche say, "Derek, pull the f___ over. Derek pull over or I am jumping out." The phone then cut off.
State Trooper Clifton Dupre, II, testified that he was dispatched to the scene of the accident. Trooper Dupre saw the defendant's truck on its side, the defendant being tended to, and Porche lying on the ground incapacitated. Trooper Dupre heard the defendant tell his mother that he did not understand why Porche was in his truck. He testified that he detected a strong odor of alcohol on the defendant's breath and that the defendant's speech was a little slurred. At Terrebonne General Medical Center, Trooper Dupre instructed Barbara Cheramie, a registered nurse, to draw blood from the defendant. Upon completion of the defendant's specimen kit, Trooper Dupre turned it over to Troop C of the Louisiana State Police the following morning. The blood sample was then sent to the State Police Crime Lab. The crime lab report indicated the defendant's blood alcohol concentration was .25 percent. Trooper Dupre also testified that he obtained the defendant's cell phone records, which indicated that a phone call was made from the defendant's cell phone to Rodrigue's cell phone at 2:10 a.m. on March 9, 2003.
Dr. Felix Mathieu testified that Porche died from a ruptured liver with massive internal hemorrhaging. He stated that Porche's injuries were consistent with being ejected from a vehicle and probably being crushed by the overturning vehicle, given the fairly-well localized injury to the liver area, as well as the external bruising. Dr. Mathieu took a blood sample from Porche and determined that her blood alcohol concentration was .15 percent. Dr. Amita Adhvaryu testified that the defendant was brought to the emergency room of Terrebonne General Medical Center, where he was treated for a broken leg and fractured vertebrae.
The defendant did not testify.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the evidence was insufficient to support the conviction of vehicular homicide. Specifically, the defendant contends that the State failed to prove a causal connection between his intoxication and Porche's death. The defendant further contends that the State did not prove beyond a reasonable doubt that he was driving instead of Porche.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585, p. 5 (La.App. 1st Cir.6/21/02), 822 So.2d 141, 144.
*117 The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. State v. Taylor, 97-2261, pp. 5-6 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La.10/17/00), 772 So.2d 78, 83.
Louisiana Revised Statutes 14:32.1 provides in pertinent part:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
Under the vehicular homicide statute, "the state . . . must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being." State v. Taylor, 463 So.2d 1274, 1275 (La.1985). It is insufficient for the State to prove merely that the alcohol consumption "coincides" with the accident. Taylor, 463 So.2d at 1275. Causation is a question of fact that has to be considered in light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct. State v. Kalathakis, 563 So.2d 228, 231 (La.1990).
The evidence clearly established that the defendant had an unlawful blood alcohol concentration while he was operating his vehicle. Five witnesses testified that they saw the defendant drinking at Club Outrageous that night before he wrecked his truck. Moreover, the crime lab report, stipulated to by both parties, indicated the defendant had a blood alcohol concentration of .25 percent, more than three times the legal limit.
The evidence further supports the jury's finding that the defendant's highly-inebriated condition caused him to wreck his truck, which resulted in the death of Porche. The defendant was "brake-talking" and doing "doughnuts" in his truck shortly before driving down the highway. Dumond testified that he was driving around 45 or 50 m.p.h. when the defendant was driving behind him. Duncan, who was riding with Dumond, testified that, when the defendant passed them up, he was going "really, really fast." Also, Porche told Rodrigue that the defendant was "driving messed up" and that she was scared and she wanted the defendant to pull over. Under these circumstances, given the defendant's reckless manner of driving from the time he left the parking lot until the time he wrecked, it was reasonable for the jury to infer that his blood alcohol concentration contributed to his running off the road and losing control of his truck. See State v. Trahan, 93-1116, pp. 11-14 (La.App. 1st Cir.5/20/94), 637 So.2d 694, 701-02.
Also, the defendant's hypothesis that Porche was driving the vehicle is unreasonable, especially in light of her conversation with Rodrigue just moments before the accident, wherein Porche indicated that the defendant's driving was scaring *118 her and that she wanted the defendant to pull over. Moreover, the testimony of Babin and Douglas Luke established that Porche told them she was going to ride with the defendant. The testimony of Domangue and Chatagnier established that a female was in the passenger's seat of the defendant's truck before the defendant left. Considering that the defendant and Porche were the only two people in his truck when it wrecked, and that nothing in the facts indicate that Porche was ever in the driver's seat of the defendant's truck, the alternative hypothesis that Porche was driving was sufficiently excluded. There does not appear to be any other hypothesis that raises a reasonable doubt about the defendant's being the driver of his truck. Thus, the evidence introduced was sufficient to establish that the defendant was the operator of his truck. See Trahan, 93-1116 at pp. 10-11, 637 So.2d at 701.
After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of vehicular homicide. The trial court did not err in denying the motion for post-verdict judgment of acquittal.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues the trial court erred in accepting blood test analysis results without proof of compliance with applicable regulations. Specifically, the defendant contends that the State failed to introduce any evidence that would indicate that, pursuant to La. R.S. 32:663, his sample blood analysis was performed in compliance with the regulations and procedures approved by the Department of Public Safety and Corrections.
On June 30, 2004, over eight months before the commencement of trial, the State filed notice of its intent to present evidence through a State Police Crime Lab certificate and attached to this notice a copy of the crime lab certificate, which indicated that the defendant's blood alcohol concentration was .25 percent. At the beginning of trial, prior to opening statements, the State and the defendant stipulated as to the authenticity of the crime lab certificate. Later during trial, both parties stipulated that the registered nurse who works at Terrebonne General Medical Center drew blood from the defendant at the direction of Trooper Dupre, placed the blood in a vial, and gave the vial to Trooper Dupre during the early morning of March 9, 2003, following the defendant's accident. The State also introduced into evidence, without objection, the Louisiana Register procedures for blood analysis.
When the State sought to introduce the crime lab certificate into evidence, the defendant objected on the grounds that the State failed to produce any evidence that the blood test analysis was performed consistent with proper scientific methods as adopted by the Department of Public Safety and Corrections. In overruling the defendant's objection, the trial court stated:
First of all, the Court does take judicial notice that the Department of Public Safety has published certain regulations and procedures that govern the obtaining of samples for purposes of chemical tests to determine levels of alcohol. And those regulations have been promulgated in the Louisiana Register.

*119 . . .
Second of all, in this matter, we had the Certificate of Scientific Analysis that was filed in this matter. That is State Exhibit 1. The Court is of the opinion that the certificate that is filed . . . pursuant to Revised Statute Title 15:499 and the following statutes after that . . . gives prima facie notice of the validity of the testing that was performed in this matter . . . as well as the validity of . . . the chain of custody.
So the Court is of the opinion that the State has properly complied with the law by virtue of taking judicial notice of the requirements.
We agree with the trial court. In compliance with the applicable law, the State properly established the statutory presumption of the defendant's intoxication. See La. R.S. 15:499 et seq., & R.S. 32:662 et seq. Had the defendant wished to challenge whether or not his sample blood analysis was performed in compliance with procedures approved by the Department of Public Safety and Corrections, he could have filed a motion to suppress, thereby enabling him to call an expert witness to question, or refute as inadequate, the validity of the analysis performed by the crime lab technician. See State v. Rowell, 517 So.2d 799 (La.1988); State v. Tanner, 457 So.2d 1172 (La.1984); State v. Fitch, 572 So.2d 677 (La.App. 1st Cir.1990). The defendant failed to file a motion to suppress or call any witnesses at trial to testify to this issue of procedural compliance.
More importantly, however, the defendant did not comply with the applicable statutory requirements. Louisiana Revised Statutes 15:499-501 provide for the introduction of evidence from criminalistics laboratories. The statutes provide that all criminalistics laboratories are authorized to make proof of examination and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. If the certificate from the laboratory contains the required statutory information, the certificate shall be prima facie proof of the facts shown thereon unless the defendant subpoenas the preparer of the certificate. This procedure relieves the proponent of the evidence of the burden of having to produce the person who performed any tests on the evidence but allows the opposing party to subpoena under cross-examination the person performing the tests. State v. Matthews, 632 So.2d 294, 301 (La.App. 1st Cir.1993).
The certificate introduced into evidence complied with La. R.S. 15:499 and, as such, constituted prima facie proof of the defendant's intoxication. The defendant failed to subpoena the preparer of the certificate in order to cross-examine him or her at trial. The defendant's attempt, therefore, to challenge the statutory presumption of his intoxication on appeal, without first raising it by a motion to suppress, and without compliance with the statutory requirements under La. R.S. 15:501, is improper.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, the defendant argues that Rodrigue's testimony about his conversation with Porche moments before the accident constituted impermissible hearsay. Specifically, the defendant contends that under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), his right to confrontation was violated.
That portion of Rodrigue's testimony objected to by the defendant is the following:

*120 Q. Okay. And what was the purpose of her call? And I know that you look like a nice young man, . . . but the jury needs to hear her exact words, as best you can recall them, what she was saying to you and how she was saying that.
A. She said that Derek was driving  she said Derek was driving messed up, and she was scared or whatever. She wanted him to pull over. I told her to just tell him to pull over, and I will pick you up on my way up. She asked him to pull over and 
Q. Did she ask him in a calm voice, or was she yelling at him?
A. Yeah, it was, like, her regular voice.
Q. Okay.
A. And then she said, "Derek, pull the f___ over. Derek, pull over or I am jumping out." She said, "Derek, pull the f___ over," and the phone cut off.
Q. Okay. So when she said, "Derek, pull the f___ over. I am jumping out," at that point, she was more excited 
A. Yeah.
Q.  than the first time she said it?
A. Like scared.
In overruling the defendant's objection, the trial court found that Rodrigue's testimony of what Porche told him was an exception to the hearsay rule under res gestae, present sense impression, or excited utterance. While we do not disagree with the trial court's finding regarding the applicability of all three exceptions, we find that the present sense impression exception is particularly applicable to the instant matter.
Louisiana Code of Evidence article 803 provides, in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
Rodrigue's testimony is hearsay under La.Code Evid. art. 801 because the statements presented through his testimony are those of Porche and because the statements were offered to prove that the defendant, not Porche, was driving his truck. However, Rodrigue's testimony qualifies under La.Code Evid. art. 803(1) as an exception to the general rule against the admissibility of hearsay. The critical factor is whether the statement was made while the individual was perceiving the event or immediately thereafter. See State v. Johnson, XXXX-XXXX, p. 11 (La.App. 1st Cir.12/22/00), 775 So.2d 670, 679, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1066. Porche's statements to Rodrigue described the event of the defendant's reckless driving as it was happening. In fact, Rodrigue's testimony appears to indicate that the accident occurred just as Porche was trying to get the defendant to pull over.
We also find the Crawford decision inapplicable to the instant matter. In Crawford, the issue was whether the use of a recorded statement at trial violated the Confrontation Clause. The State sought to introduce a recorded statement that defendant's wife, Sylvia, who did not testify at trial, had made during police interrogation, as evidence that the stabbing was not self-defense. Crawford, 541 U.S. at 40, 124 S.Ct. at 1358. The Court held that the use of Sylvia's statement violated the Confrontation Clause because, where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. Crawford, 541 U.S. at 68-69, 124 S.Ct. at 1374.
*121 In his concurrence, Chief Justice Rehnquist noted the Crawford Court drew a distinction between testimonial and nontestimonial statements and confined its holding to testimonial evidence. Crawford, 541 U.S. at 71-72, 124 S.Ct. at 1376. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. Historically, in a criminal context, the Court noted, "Most of the hearsay exceptions covered statements that by their nature were not testimonial[.]" Crawford, 541 U.S. at 56, 124 S.Ct. at 1367.
The defendant's reliance on Crawford is misplaced because Porche's statements to Rodrigue were not testimonial in nature. Porche was not speaking to the police. She was speaking to a friend. She had no expectation that her statements would be of later use to help establish that the defendant had committed a crime. She spoke informally and without coercion. Her statements, thus, are not the sort that implicates the requirement of Crawford that prior "testimonial" statements be subject to cross-examination prior to admission. See State v. Heggar, 39,915, p. 7 (La.App.2d Cir.8/17/05), 908 So.2d 1245, 1249.
We conclude that Porche's statements to Rodrigue moments before the accident were nontestimonial and that Rodrigue's testimony at trial about what Porche had told him falls within the present sense impression exception to the hearsay rule. The trial court, therefore, did not err in allowing Porche's statements into evidence.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, the defendant argues his conviction by a unanimous six-person jury is unconstitutional. Specifically, the defendant contends that in light of recent United States Supreme Court decisions, his conviction should have been by a unanimous twelve-person jury.
The punishment for vehicular homicide is imprisonment with or without hard labor. La. R.S. 14:32.1(B). Louisiana Constitution article I, § 17(A) and Louisiana Code of Criminal Procedure article 782(A) provide that in cases where punishment may be confinement at hard labor, the case shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
The defendant's reliance on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), is misplaced. These Supreme Court decisions do not address the issue of the constitutionality of a unanimous six-person, as opposed to a twelve-person, jury verdict; rather, they address the issue of whether the assessment of facts in determining an increased penalty of a crime beyond the prescribed statutory maximum is within the province of the jury or the trial judge, sitting alone. These decisions thus stand for the proposition that any fact (other than a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. See Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. Nothing in these decisions suggests that the verdict must be by a unanimous twelve-person jury, or even a unanimous jury, for a defendant's sentence to be increased. *122 Accordingly, La. Const. art. I, § 17(A) and La.Code Crim. P. art. 782(A) are not unconstitutional and, hence, not violative of the defendant's Sixth Amendment right to trial by jury.[3]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
In his fifth assignment of error, the defendant avers the trial court erred in imposing an excessive sentence.
Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing a sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1st Cir.5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Holts, 525 So.2d 1241, 1245 (La. App. 1st Cir.1988). The trial court should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. State v. Jones, 398 So.2d 1049, 1051-52 (La.1981).
At sentencing, it is clear the trial court considered La.Code Crim. P. art. 894.1. The trial court found, among other things, that given the defendant's criminal history, his respect for the law, his concern for other people, and his involvement with alcohol all had to be questioned. The defendant had numerous citations for speeding violations. He received a citation in February 2000 for underage drinking. He had a DWI offense on June 19, 1999, to which he pled guilty on June 29, 2000. He also had numerous citations for loud music for which he was fined and ordered to do community service work. The trial court found that given the circumstances of the case and that it involved a fatality, a lesser sentence would deprecate the seriousness of the defendant's crime.
The seven-year sentence imposed by the trial court was well within the statutory sentencing range. The defendant could have received twenty years imprisonment at hard labor, as well as a fine of fifteen thousand dollars, for the crime of vehicular homicide.[4] In view of its careful consideration of the circumstances of the offense and the defendant's criminal history, we find no manifest abuse of discretion by the court in imposing a sentence that was only about one-third the possible maximum sentence. *123 The sentence is not grossly disproportionate to the severity of the offense and, therefore, is not constitutionally excessive.
This assignment of error is without merit.

REVIEW FOR ERROR
Initially, we note that our review for error is pursuant to La.Code Crim. P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim. P. art. 920(2). This article makes no reference to the errors for review as "patent."
Louisiana courts have screened appeals for patent error at least since the mid-nineteenth century. See State v. Behan, 20 La. Ann. 389 (1868) ("Our appellate jurisdiction, in criminal cases, is limited to questions of law alone. These questions must be presented by bill of exceptions or assignments of errors; or the errors be apparent on the face of the record.") The phrase "error patent" was in use even earlier, describing a potential defect in the proceedings as opposed to trial error. See State v. Swift, 14 La. Ann. 827 (1859).
When the intermediate appellate courts assumed jurisdiction over most criminal matters in 1982, we inherited a system requiring us to check for two dozen or so potential defects in every appeal. While most of these defects were based on articles of the Code of Criminal Procedure and required only a corrective notation in the opinion, a few were based upon constitutional provisions, and jurisprudentially most of these defects were held to be reversible error. See State v. Campbell, 95-1409 (La.3/22/96), 670 So.2d 1212 (per curiam) (return of non-responsive verdict); State v. Jenkins, 406 So.2d 1352 (La.1981) (per curiam) (verdict returned by jury composed of fewer than the correct number of jurors); State v. Williams, 404 So.2d 954 (La.1981) (no jury trial waiver); State v. Stevenson, 334 So.2d 195 (La.1976) (improperly charged by bill of information for life or capital offense).
Notably of late, the Louisiana Supreme Court has turned away from its own jurisprudence finding reversible patent error in a variety of these situations involving constitutional errors. For example, in State v. Jackson, 2004-2863 (La.11/29/05), 916 So.2d 1015, the court reviewed an appellate court's decision reversing a conviction after its patent error inspection revealed that the trial court had accepted a guilty plea to a crime that was not responsive to the crime charged in the bill of information. Therein, both the defendant and the State argued in favor of the validity of the plea, but the appellate court relied on State v. Cook, 372 So.2d 1202 (La.1979), and found the trial court lacked jurisdiction to accept the plea. The Louisiana Supreme Court reversed the court of appeal and "clarified" Cook by finding that it was not intended to create a broad rule vitiating guilty pleas that are voluntarily and intelligently made. Jackson, 2004-2863 at pp. 9-12, 916 So.2d at 1020-21.
In State v. Jones, XXXX-XXXX (La.2/22/06), 922 So.2d 508, the Louisiana Supreme Court reviewed an en banc decision by this circuit in which the court was split over the issue of a conviction returned by an improper configuration of jurors. In that case, the defendant was tried and unanimously convicted by a jury of twelve members for driving while intoxicated, although he was constitutionally and statutorily entitled to trial by six jurors. Six judges voted to affirm the conviction; six judges voted to reverse the conviction *124 based on the error regarding the jury configuration. Before the Louisiana Supreme Court, the defendant adopted the view of the judges who recognized the error, arguing his conviction should be reversed because of the improperly constituted jury. The court noted its lengthy jurisprudence on the issue, consisting of almost one hundred years of holding that verdicts returned by an improper number of jurors are null. Referring to the error in Jones as "constitutional" instead of "patent" error, the court analyzed whether it was inherently prejudicial and ultimately concluded that, despite the constitutional and statutory requirements, the defendant's conviction by a unanimous twelve-person jury did not rise to the level of a prejudicial structural error and thus was subject to a harmless error analysis. "The key feature of the right to a jury trial does not hinge on the number of jurors, but rather is to ensure fair deliberations." Jones, XXXX-XXXX at p. 4, 922 So.2d at 512. The court specifically held that a jury composed of a greater number of persons than constitutionally required no longer constitutes a non-waivable jurisdictional defect subject to automatic reversal. Jones, XXXX-XXXX at p. 6, 922 So.2d at 513. In other words, the court did not find "patent error."
The Louisiana Supreme Court, as a whole, has not recognized "patent error" since State v. Campbell, XXXX-XXXX (La.7/6/04), 877 So.2d 112.[5] Therein, the court noted that the district court had allowed the DWI defendant to keep the car he was driving at the time of the offense, in violation of La. R.S. 14:98 D(2)(a). Even though the State apparently had acquiesced in the judgment, the court noted, "[W]e do not ignore patent errors favorable to the defendant when the State does not complain about them" and ordered corrective action regarding the seizure of the car. Campbell, XXXX-XXXX at pp. 5-6, 877 So.2d at 115-6.
Jackson and Jones were decided after Campbell, and they signal a clear change of direction for the appellate courts. Defects in the proceedings, even violations of the constitution, that are not inherently prejudicial to the defendant are no longer considered reversible "patent error." Accordingly, we limit our review under La. Code Crim. P. art. 920(2) to errors that inherently prejudice the defendant.
At the time of the commission of the crime on March 9, 2003, the law provided that whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than two years nor more than twenty years. La. R.S. 14:32.1(B). In the instant matter, the trial court sentenced the defendant to seven years at hard labor, but failed to impose the mandatory fine upon the defendant pursuant to La. R.S. 14:32.1(B).
Although the trial court's failure to impose the mandatory fine in accordance with La. R.S. 14:32.1(B) is error under La.Code Crim. P. art. 920(2), it is certainly harmless error. The defendant is not prejudiced in any way by the court's failure to impose the fine. Under the general provisions of La.Code Crim. P. art. 882(A), an illegally lenient sentence "may" be corrected at any time by an appellate court on review. However, this court is not required to take such action; although *125 a remand for resentencing is authorized by the jurisprudence, it is not mandatory. See State v. Haynes, XXXX-XXXX (La.12/10/04), 889 So.2d 224 (per curiam), and State v. Paoli, XXXX-XXXX, pp. 6-8 (La. App. 1st Cir.4/11/02), 818 So.2d 795, 799-800 (en banc), writ denied, 2002-2137 (La.2/21/03), 837 So.2d 628. To the extent that Paoli may be interpreted to hold otherwise, it is overruled only in that respect. Because the trial court's failure to impose the fine was not raised by the State in either the trial court or on appeal, we are not required to take any action. As such, we decline to correct the illegally lenient sentence. See State v. Paul, 2005-612, p. 19 (La.App. 5th Cir.2/14/06), 924 So.2d 345, 357.

CONCLUSION
For these reasons, we find no merit in the defendant's assignments of error, and we affirm his conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
CARTER and WHIPPLE, JJ., concur.
GUIDRY, J., agrees with the affirming of the conviction and sentence and concurs with the overruling of Paoli.
McDONALD, J., concurs with reasons and agrees with reasons.
WELCH, J., concurs in part and dissents in part and will assign reasons.
McDONALD, J., Agreeing in Part and Concurring.
While I agree with the analysis and conclusions of the opinion authored by my esteemed colleague, Judge Kuhn, I take this opportunity to address the difference between plain and patent error. La.Code Crim. P. art. 920, entitled "Scope of appellate review", provides that "The following matters and no others shall be considered on appeal: . . . (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (Emphasis added.) This has come to be known as a patent error. However, there is a distinction between patent error and plain error. Federal law provides for plain error; Louisiana law does not. Federal Rules of Criminal Procedure, Rule 52(b) provides that "[A] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."
Thus, a plain error is such that requires reversal because it is so fundamentally prejudicial to the due process rights of the defendant. In State v. Williamson, 389 So.2d 1328 (La.1980), the supreme court reviewed an erroneous jury instruction even though the defendant failed to object at trial. In reversing the conviction the court stated:
[T]he asserted error involves the very definition of the crime of which the defendant was in fact convicted. Such an error is of such importance and significance as to violate fundamental requirements of due process. 389 So.2d at 1331.
However, in State v. Thomas, 427 So.2d 428 (La.1982), on rehearing, the court warned against equating a patent error review with plain error. The court cautioned:

Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. 427 So.2d at 435; see also State v. Belgard, 410 So.2d 720, 727 (La.1982).
Thus, the error must be of such magnitude when found on a patent error search as to prejudice the defendant and the burden is *126 on the defendant to prove that he was prejudiced. State v. Brown, 868 So.2d 775 (La.App. 1 Cir.2003) citing See State v. Augustine, 555 So.2d 1331, 1333-1334 (La.1990) and State v. Claxton, 603 So.2d 247, 250 (La.App. 1 Cir.1992). Unless the defendant can show he was prejudiced by the error, the conviction is not reversible.
As Judge Kuhn aptly points out, Jackson and Jones have signaled a change of direction for the appellate courts in reviewing for patent error. Those errors that are not prejudicial to the defendant are no longer considered reversible patent error. Those that are prejudicial to the defendant would be reversible patent error, the same as plain error under federal law. For these reasons, including those stated in Judge Kuhn's majority opinion, I agree the conviction and sentence should be affirmed.
WELCH, J., Concurring in Part and Dissenting in Part.
I respectfully concur in part and dissent in part from the majority opinion in this case. I concur in the majority opinion insofar as it affirms the defendant's conviction and overrules State v. Paoli, XXXX-XXXX (La.App. 1st Cir.4/11/02), 818 So.2d 795 (en banc), writ denied, 2002-2137 (La.2/21/03), 837 So.2d 628, to the extent that it has been interpreted to mandate a remand for re-sentencing when the sentencing court has imposed an illegally lenient sentence.
However, I must respectfully dissent from that portion of the majority's opinion that suggests we no longer review records for errors patent and declines to correct the defendant's illegally lenient sentence. Louisiana Code of Criminal Procedure article 920(2) provides that "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence" shall be considered on appeal. The majority opinion notes that this article makes no reference to the errors for review as "patent." However, as my colleague Judge McDonald succinctly noted, the review for errors under La.C.Cr.P. art. 920(2) has become known as patent error. Indeed, in the legal sense, the term "patent" describes that which is "open," "manifest," or "evident."[1] Whether we refer to a review under La.C.Cr.P. art 920(2) as "review for errors" or a "patent error" is simply matter of semantics and preference. And, regardless of how it is termed, when such error is present in an appeal, we must consider the error  even if the error was favorable to the defendant. See State v. Campbell, XXXX-XXXX (La.7/6/04), 877 So.2d 112, 116 ("Even though the State apparently acquiesced in [the illegal sentencing] judgment and does not complain of this potential error, we do not ignore patent errors favorable to the defendant when the State does not complain about them. State v. Williams, XXXX-XXXX p. 9-10 (La.11/28/01), 800 So.2d 790, 798.")
In this case, the trial court sentenced the defendant to imprisonment for seven years at hard labor. However, at the time the crime was committed, La. R.S. 14:32.1(B) mandated a sentence of: a fine of not less than two thousand dollars nor more than fifteen thousand dollars, and imprisonment, with or without hard labor, for not less than two years nor more than twenty. Thus, the trial court imposed an illegally lenient sentence because it failed to impose the mandatory fine upon the defendant pursuant to La. R.S. 14:32.1(B).
Louisiana Code of Criminal Procedure article 882(A) provides that "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by *127 an appellate court on review." This article states the almost self-evident authority of the court to correct an illegal sentence at any time, for an illegal sentence is, in the contemplation of the law, no sentence at all. State v. Johnson, 220 La. 64, 68, 55 So.2d 782, 784 (1951). (Emphasis added).
The majority declines to correct the illegally lenient sentence, since it is favorable to the defendant. However, it is well established that a defendant in a criminal case does not have a constitutional or statutory right to an illegal sentence. Williams, 800 So.2d at 797. If we ignore this illegally lenient sentence, we are allowing the trial court, the State (district attorney), and the defendant to circumvent the punishment that our legislature has mandated to be imposed on the defendant. We should not sanction such action. Accordingly, since Paoli has been overruled, I would correct the defendant's illegally lenient sentence by imposing the minimum fine mandated by our legislature.
For these reasons, I respectfully concur in part and dissent in part.
NOTES
[1] The defendant is also referred to as "Derek P. Price." We refer to him as "Derick P. Price" in accordance with the grand jury indictment.
[2] "Brake-talking" is where the driver hits the brake and gas pedals simultaneously, which causes the vehicle's tires to "spin out" while the vehicle remains stationary.
[3] We question whether this issue is properly before us since the defendant failed to make an objection regarding this issue at any time during the trial of this matter. See La.Code of Crim. P. art. 841.
[4] Subsequent legislation has increased the maximum sentence of imprisonment to thirty years under La. R.S. 14:32.1(B). See 2004 La. Acts No. 381, § 1, effective August 15, 2004.
[5] Justice Johnson's dissent in State v. Weary, XXXX-XXXX (La.4/24/06), 931 So.2d 297, cert denied, ___ U.S. ___, 127. S.Ct. 682, 166 L.Ed.2d 531 (2006), indicates that she would find patent error in a death penalty case where a pro-death penalty juror is not asked if he or she could likewise return a sentence of life imprisonment.
[1] See Black's Law Dictionary (5th Edition), 1013.