STATE OF LOUISIANA
v.
JOHN RUIZ.
No. 2007 KA 1973.
Court of Appeals of Louisiana, First Circuit.
June 6, 2008.
RICHARD J. WARD, Jr. District Attorney
ELIZABETH A. ENGOLIO ASSISTANT DISTRICT ATTORNEY PLAQUEMINE, LA, Counsel for Appellee State of Louisiana.
BRANDON BROWN BATON ROUGE, LA, Counsel for Defendant/Appellant JOHN RUIZ.
Before: WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
The defendant, John Ruiz, was charged by bills of information with distribution of methamphetamine, a violation of La. R.S. 40:967(A)(1) (bill no. 652-06), and distribution of methylenedioxymethamphetamine[1] (MDMA; also known as "Ecstasy"), a violation of La. R.S. 40:966(A)(1) (bill no. 653-06). He pled not guilty to both charges. The defendant waived his right to a jury trial and, following a bench trial, the defendant was found guilty on both charges. For each conviction, the defendant was sentenced to twelve years at hard labor with the first two years of each sentence to be served without benefit of probation, parole, or suspension of sentence. The sentences were ordered to run concurrently. The defendant now appeals, designating two assignments of error. We affirm the convictions, vacate the sentences, and remand for resentencing.

FACTS
Officer Tracey Lord with the Plaquemine Police Department was working undercover with the Law Enforcement Against Drugs (LEAD) Task Force, a multi-jurisdictional drug task force, under the supervision of Sergeant Ty Patin with the Iberville Parish Sheriffs Office. The task force was targeting certain areas of high drug use, particularly bars, in Plaquemine. Officer Lord was fitted with an audio transmitter, or wire, so that Sergeant Patin could monitor her conversations and ensure her safety. Officer Lord's undercover alias was Dana Boston.
On February 17, 2006, Officer Lord, while wearing a wire, met the defendant in the parking lot of Miranda's, where the defendant worked. The defendant entered Officer Lord's vehicle and, after some discussion about drugs, the defendant told Officer Lord that he could get her ten ecstasy pills and a gram of crystal meth. The defendant told Officer Lord that it would take a couple of hours to get the drugs and that he would meet her later at Mike's Lounge. Later that evening, the defendant met Officer Lord at Mike's Lounge. Officer Lord, the defendant, and Christy Rhorer,[2] who was with the defendant, walked to the defendant's truck. The defendant told Officer Lord that he could get the drugs, but he would need $250.00. Officer Lord gave the defendant the money. The defendant told Officer Lord to wait at Mike's Lounge and that he would return. From the monitoring device in his vehicle, Sergeant Patin heard the drug deal being set up between Officer Lord and the defendant, as well as Officer Lord counting out the money that she gave to the defendant.
The defendant and Rhorer drove to a Racetrac gas station. The defendant got into a vehicle to talk to someone, and Rhorer went inside the Racetrac and bought a pack of cigarettes. A short while later, the defendant and Rhorer returned to the parking lot of Mike's Lounge. Rhorer entered Mike's Lounge, while the defendant remained in his truck. Rhorer approached Officer Lord and gave her a Marlboro Lights cigarette box. Inside the cigarette box were two small baggies. One baggie contained ten ecstasy pills, and the other baggie contained a little over a gram of methamphetamine.
Rhorer testified at trial that she did not put the drugs inside the cigarette box. Officer Lord testified at trial that when she left Mike's Lounge with the drugs, she encountered the defendant outside. She asked the defendant why he had Rhorer go in and "throw" the box of cigarettes at her "like that." The defendant told Officer Lord that "it was just easier to let her out right there at the door and come give it to me." The defendant did not testify at trial.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues that the trial court erred in allowing police officers to testify at trial regarding surveillance made of the alleged transaction between him and Officer Lord when Sergeant Patin intentionally failed to record the alleged transaction. Specifically, the defendant contends that Sergeant Patin's failure to preserve the audio transmissions, despite the ready and simple means of doing so, violated his constitutional right to due process.
Sergeant Patin testified at trial that the audio monitoring device he used to listen to Officer Lord's conversations had a tape recorder attached to it. However, Sergeant Patin did not record any of these conversations or dealings with the defendant. Sergeant Patin explained that the primary reason for Officer Lord's wearing a wire was not to make recordings and gather evidence against the defendant, but rather to ensure the safety of Officer Lord. Officer Lord testified at trial that she wore a wire for her safety, namely so that the LEAD Task Force could hear what was occurring and know her whereabouts.
The defendant contends that this "missing evidence" was exculpatory and essential to supporting an entrapment defense or other defenses. The defendant further contends that the failure of the police "to preserve evidence such as audio transmissions" is inexplicable. Finally, in support of his position, the defendant cites California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), which dealt with whether or not the destruction of evidence (breath samples) by authorities violated the defendant's right to due process.
The defendant's contentions are baseless, and his reliance on Trombetta is misplaced. The defendant is essentially asserting that nonexisting evidence is exculpatory. The defendant's contention that if Sergeant Patin had recorded Officer Lord's undercover dealings, there could have been exculpatory evidence on that tape, or evidence that would have been detrimental to the State's case, is mere speculation. Sergeant Patin used a wire to monitor Officer Lord for safety purposes, and he was under no obligation, legal or otherwise, to record any audio transmission. Insofar as any recording is concerned, no evidence was destroyed, as in Trombetta. because no such evidence existed. Accordingly, there was no "missing evidence" in the instant matter that was essential to the defendant's case.
In its reasons for adjudging the defendant guilty, the trial court stated in pertinent part:
After considering the evidence [and] listening to the witnesses in this case, ... the only evidence that you have presented in Court was the testimony of witnesses or documentation from laboratories or other type of documentary evidence that would have been introduced. And unless our law has changed, that type of evidence is still good today.
There is no requirement that the police record the conversation. There is no requirement that the police video tape any type of transactions that take place.
In this particular case, the explanation given for why the conversations weren't recorded is a reasonable explanation; that being for the protection of the undercover officer in this situation, being able to monitor to make certain that she was safe, also being able to monitor exactly where she was located at.
We agree with the trial court. Accordingly, since the defendant's right to due process was not violated, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues that the evidence was insufficient to support his convictions. Specifically, the defendant contends that the State failed to prove that he ever possessed the drugs that were distributed to Officer Lord.
In his brief, the defendant states that the crime of possession with intent to distribute marijuana requires proof that a defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. Since there was no evidence that the defendant possessed the drugs, either physically or constructively, it is argued that the State failed to prove the essential element of possession of either drug charged in the bills of information.
The defendant was not charged with possession with intent to distribute marijuana; nor is possession an essential element of the crime of distribution of a controlled dangerous substance, the defendant's actual charges. Notwithstanding the defendant's application of incorrect law to the facts, we will address the sufficiency of the defendant's convictions for distribution of methamphetamine and distribution of MDMA.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); State v. Ordodi 06-0207, p. 10 (La. 11/29/06), 946 So. 2d 654, 660; State v. Mussall 523 So. 2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585, pp. 4-5 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfmder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1st Cir. 9/25/98), 721 So. 2d 929, 932.
The defendant is guilty of the charged crimes if he knowingly or intentionally distributed methamphetamine, La. R.S. 40:967(A), and MDMA, La. R.S. 40:966(A). Only general criminal intent is required. Such intent is established by mere proof of voluntary distribution. See State v. Parker. 536 So. 2d 459, 463 (La. App. 1st Cir. 1988), writ denied, 584 So. 2d 670 (La. 1991).
Under La. R.S. 40:961(14), the term "distribute" means:
to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.
"Distributor" means a person who delivers a controlled dangerous substance as herein defined. La. R.S. 40:961(15). The term "deliver" is defined in La. R.S. 40:961(10) as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." In addition, the case law has defined "deliver" as transferring possession or control. State v. Martin, 310 So. 2d 544, 546 (La. 1975). Transfer of possession or control, i.e., distribution, is not limited to an actual physical transfer between the culpable parties. State v. Gentry, 462 So. 2d 624, 627 (La. 1985). Rather, distribution may be accomplished by the employment of a third party. A defendant may be guilty as a principal in the crime of distribution if he aids and abets in the distribution or directly or indirectly counsels or procures another to distribute a controlled dangerous substance. La. R.S. 14:24; 40:967; State v. Hutchins, 502 So. 2d 606, 608 (La. App. 3d Cir. 1987). See Parker, 536 So. 2d at 463.
In the instant case, Officer Lord met with the defendant, who told her that he could get her ten ecstasy pills and a gram of methamphetamine. Officer Lord testified that she gave the defendant $250.00 for the drugs. Sergeant Patin testified that Officer Lord was wearing a wire and he listened to the audio transmission of the drug negotiations between Officer Lord and the defendant, as well as to the defendant receiving the $250.00 for the drugs. A short time later, the defendant returned to the parking lot of Mike's Lounge with Rhorer. For the sake of convenience, the defendant had Rhorer exit his truck and physically hand to Officer Lord the drugs, which were contained in a cigarette box.
After a thorough review of the record, we find that the evidence supports the trial court's rulings. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the crimes of distribution of methamphetamine and distribution of MDMA. See Parker, 536 So. 2d at 463.
This assignment of error is without merit.

REVIEW FOR ERROR UNDER LA. C.Cr.P. art. 920(2)
In reviewing the record for error under La. C.Cr.P. art. 920(2), we have discovered an error with one of the bills of information (No. 653-06). While the bill correctly lists the crime as distribution of a Schedule I controlled dangerous substance, the narrative indicates that the defendant and Christy Rhorer committed the offense of attempted distribution of a Schedule I controlled dangerous substance.[3]
Louisiana Code of Criminal Procedure article 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
If a bill of information states the essential facts of the offense charged, the defendant does not object to any error in the bill of information, and the defendant does not claim surprise or prejudice, any error in the bill of information is harmless. See State v. Harris, 96-205, p. 2 (La. App. 3d Cir. 10/9/96), 684 So. 2d 1, 2, writ denied, 96-2566 (La. 3/21/97), 691 So. 2d 81. The bill of information in the present case states the essential facts of the offense charged. Furthermore, the defendant has not claimed surprise or prejudice. In his opening statement, the prosecutor stated that he intended to show beyond a reasonable doubt that "the defendant is guilty of the two charges here today of distribution of methamphetamine and distribution of MDMA." In his closing argument, the prosecutor stated that the evidence showed that "the defendant distributed methamphetamine and MDMA to Officer Tracey Lord." The prosecutor concluded his closing argument by stating "[t]he State feels it has shown its burden of proof and the defendant should be found guilty of distribution of methamphetamine and distribution of MDMA." In finding the defendant guilty, the trial court stated "this Court is convinced beyond a reasonable doubt that you are guilty of both of these offenses: distribution of methamphetamine, crystal methamphetamine and also guilty of distribution of ecstasy."
The defendant, at no time during the trial, objected to the error in the bill of information. Also, the defendant did not file a motion to quash or a motion for bill of particulars. See State v. Mallett, 357 So. 2d 1105,1108 (La. 1978), cert, denied, 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979). Accordingly, the error is harmless.

Sentencing Error
For each conviction, the trial court sentenced the defendant to twelve years imprisonment at hard labor with the first two years of each sentence to be served without benefit of probation, parole, or suspension of sentence. Under La. R.S. 40:967(B)(1), the penalty for distribution of methamphetamine is a term of imprisonment at hard labor for not less than two years nor more than thirty years. Under La. R.S. 40:966(B)(2), the penalty for distribution of MDMA (ecstasy) is a term of imprisonment at hard labor for not less than five years nor more than thirty years, at least five years of which shall be served without benefit of parole, probation, or suspension of sentence.
The sentence for the distribution of methamphetamine conviction is illegally harsh in that the trial court unlawfully denied eligibility for parole, probation, or suspension of sentence when La. R.S. 40:967(B)(1) does not so prescribe. See State v. Green, 391 So. 2d 833, 834 (La. 1980); State v. Benedict, 607 So. 2d 817, 823 (La. App. 1st Cir. 1992). On the other hand, the sentence for the conviction of distribution of MDMA is illegally lenient, as La. R.S. 40:966(B)(2) requires that a minimum of five years of the sentence be served without benefit of parole, probation, or suspension sentence. Since the provision that restricts benefits is indeterminate ("at least five years"), the sentence for the distribution of MDMA conviction cannot be corrected by this court. Accordingly, we affirm the defendant's convictions, but vacate both sentences and remand to the trial court for resentencing. See State v. Price, 05-2514, p. 22 (La. App. 1st Cir. 12/28/06), 952 So. 2d 112, 124 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So. 2d 1277.
CONVICTIONS AFFIRMED; SENTENCES VACATED; AND REMANDED FOR RESENTENCING
NOTES
[1] This bill of information (no. 653-06) mistakenly lists the crime charged as both distribution of MDMA and attempted distribution of MDMA. This was harmless error, as discussed below.
[2] Rhorer was listed as a co-defendant in this case. It appears the prosecution of the co-defendants was severed because Rhorer, a witness for the prosecution in the instant matter, testified that her case had not been resolved yet and that her attorney was working on it.
[3] Also, under the section where the charge is first listed, as well as in the narrative, it states, "La. RS40:27:966a(l)." Apparently, the notation "27," which likely referred to "14:27," the crime of attempt, was inadvertently left in from a previous bill of information that included the crime of attempt.