McDONALD, J.
The defendant, Charles Douglas Chandler II, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1 (count one), and by bill of information with possession of a firearm or carrying a concealed weapon by a convicted felon, a violation of LSA-R.S. 14:95.1 (count two). The defendant pled not guilty on both counts. A jury later found him guilty as charged on both counts. On count one, the trial court granted the defendant's motion for post verdict judgment of acquittal and modified the conviction to guilty of the responsive offense of manslaughter, a violation of LSA-R.S. 14:31. The trial court granted the State's motion to delay sentencing pending appeal. The State appealed, assigning error to the trial court's ruling on the motion for post verdict judgment of acquittal. In an unpublished opinion, this Court reversed the trial court's ruling modifying the verdict on count one, reinstated the original conviction on count one, and remanded for sentencing on both convictions. The Supreme Court denied the defendant's writ application. State v. Chandler , 15-1493 (La. App. 1 Cir. 2/24/16), 2016 WL 759165 (unpublished), writ denied , 16-0561 (La. 3/31/17), 217 So.3d 359 ( Chandler I ) .
On remand, the trial court sentenced the defendant to life imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence on count one, and to 18 years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence on count two. The defendant now appeals, assigning error to the sufficiency of evidence on count one. For the following reasons, we affirm the conviction on count one and the sentences on both counts.
STATEMENT OF FACTS
On April 28, 2013, between 11:00 p.m. and midnight, three gunshots were fired on Columbus Avenue in Bayou Vista, Louisiana. The gunshots were heard by bystanders and area residents, including Gwendolyn Landry Hidalgo, who called 911 immediately after hearing the gunshots. Officers of the St. Mary Parish Sheriff's Office (SMPSO) responded to the scene of the shooting at 1220 Columbus Avenue. Fifteen to twenty people were at the scene when the police arrived, and the scene was in disarray. SMPSO Patrol Lieutenant Jeremy Green arrived around 10 to 15 minutes after the gunshots were reported. He secured the scene and summoned medical personnel for Wade Blackburn, Jr., the victim. When the police arrived, the victim was lying unresponsive in the carport. Efforts to revive the victim were unsuccessful, and he was pronounced dead at the scene, having suffered a fatal contact gunshot wound to his abdomen. Lt. Green located a spent shell casing at the scene. According to Tammy James, the owner of the residence where the shooting occurred, the defendant showed up at her *952 residence that night looking for the victim, and the three shots were fired after the defendant and the victim began tussling over the gun. Fragments from the first gunshot grazed Ms. James's stomach, fragments from the second shot hit her daughter, and the third shot struck the victim. The defendant fled from the scene after the shots were fired.
Unbeknownst to Craig Corbett Nini, sometime after the shooting, the defendant hid in the backseat of Mr. Nini's truck, which was parked in Bayou Vista at the time. After Mr. Nini started his truck and pulled off, the defendant made his presence known and instructed Mr. Nini to continue driving. Tyler Emmanuel Brewer, who had ridden with Mr. Nini to Bayou Vista, was sitting outside and saw the defendant when he ran and jumped into the back of Mr. Nini's truck. Moments later, Mr. Brewer observed the police pursuing the defendant and told them that he was in the back of the truck. Shortly after Mr. Nini drove off, the police swarmed the vehicle and apprehended the defendant.
While executing a search warrant for the defendant's residence at 149 Sun Road, the police located the gun used in the shooting, a Glock 30 .45 caliber semi-automatic pistol, under the TV stand in the defendant's bedroom.[1] When recovered, the gun had several rounds in the magazine and a spent cartridge in the chamber.
ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues that the jury's verdict on count one is not rational. He argues that the witnesses' testimony establishes that the fatal shooting occurred during a struggle for the murder weapon and is inconclusive as to what happened when the three shots were fired. Thus, the defendant contends that the record lacks evidence that he intended to kill the victim. He does not contest the conviction on count two. In response, the State, in pertinent part, argues that the defendant cannot raise sufficiency of the evidence on the issue of his specific intent to kill or inflict serious bodily harm, since that issue was disposed of in the previous appeal of this case, Chandler I. As discussed below, we find that the State's response has merit.
The law of the case doctrine embodies the rule that an appellate court ordinarily will not reconsider its own rulings on a subsequent appeal in the same case. The reasons for the law of the case doctrine are to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and, to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Barringer v. Robertson , 15-0698 (La. App. 1 Cir. 12/2/15), 216 So.3d 919, 924-25, writ denied , 16-0010 (La. 2/26/16), 187 So.3d 1004 ; see Day v. Campbell-Grosjean Roofing & Sheet Metal Corp. , 260 La. 325, 330, 256 So.2d 105, 107 (1971). The doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process. State v. Cox , 11-0789 (La. App. 1 Cir. 5/23/12), 2012 WL 1900539 at *3 (unpublished), writ denied , 12-1675 (La. 2/22/13), 108 So.3d 763. The *953 law of the case doctrine is not an inflexible law, thus appellate courts are not absolutely bound by it and may exercise discretion in its application. The doctrine is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Further, the doctrine applies only against those who were parties to the case when the earlier decision was rendered and who thus have had their day in court. Barringer , 216 So.3d at 925.
In Chandler I , this Court thoroughly analyzed the issue raised by the defendant in this appeal and there is no new evidence to warrant reconsideration. In Chandler I , the State contended that the jury made a reasonable factual inference that the defendant had specific intent to kill in this case and the trial court should not have disturbed that finding. 2016 WL 759165 at *2. The defendant filed a brief in response wherein he addressed the State's appeal.
In Chandler I , this Court stated:
Although the witnesses testified that there was a struggle when the victim tried to prevent the shooting, the witnesses were consistent that the defendant had his finger on the trigger before the shots were fired. Further, the bulk of the testimony supported a finding that the shooting was intentional and that the defendant was in control of the weapon when he fired three shots. 2016 WL 759165 at *8.
The testimony was consistent that the victim and the defendant argued over the defendant pointing the gun at the victim, who tried to push the gun away, and that the defendant maintained possession of the gun. The Chandler I court concluded:
The jury's apparent inference of specific intent to kill was reasonable based on the circumstances presented. Based on our careful review, we are convinced that any rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder. [Footnote omitted.] Id.
The Chandler I court then reversed the trial court's ruling modifying the verdict on count one to manslaughter, reinstated the original conviction of second degree murder, and remanded the case for sentencing based on the jury's verdict. Id. The Louisiana Supreme Court denied the defendant's writ application seeking further review. Based on our review of the record, as well as the applicable law, there is no indication this Court committed palpable error in Chandler I , nor is there any indication that if the law of the case were applied in this instance, manifest injustice would occur. Thus, we decline to reverse our previous ruling in Chandler I.
PATENT ERROR REVIEW
This Court routinely reviews the record for patent errors pursuant to LSA-C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record here, we have found no reversible errors. However, we note that in sentencing the defendant on the conviction of possession of a firearm or carrying a concealed weapon by a convicted felon, count two, the trial judge did not impose the mandatory fine of not less than $1,000 nor more than $5,000. See LSA-R.S. 14:95.1B. The trial court's failure to impose the fine certainly is not inherently prejudicial to the defendant. As such, we decline to correct the illegally lenient sentence. See *954 State v. Price , 05-2514 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 123-125(en banc) , writ denied , 07-0130 (La. 2/22/08), 976 So.2d 1277.
CONVICTION ON COUNT ONE AFFIRMED; SENTENCES ON BOTH COUNTS AFFIRMED.

An additional shell casing was located at the scene. The parties entered into a joint stipulation regarding the testimony of Mark Kurowski, an expert in forensic firearms analysis. The parties stipulated that, if called to testify, Mr. Kurowski would testify that the shell casings in evidence and the bullet removed from the victim's body had the same class characteristics; that he could identify the shell casings as having been fired from the semi-automatic pistol; however, that it was not possible to identify or eliminate the bullet as having been fired from the semi-automatic pistol.