STATE OF LOUISIANA
v.
WINSTED THOMAS DUPONT.
No. 2007 KA 1094.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
ANTHONY G. FALTERMAN, District Attorney, and DONALD D. CANDELL, Assistant District Attorney, Counsel for Appellee, State of Louisiana.
THOMAS C. DAMICO, Counsel for Defendant/Appellant, Winsted Dupont.
Before PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Winsted Dupont, defendant, was charged by bill of information with pornography involving juveniles, a violation of La. R.S. 14:81.1 (Count 1), and molestation of a juvenile by virtue of his position of control or supervision, a violation of La. R.S. 14:81.2 (Count 2). After entering a plea of not guilty, defendant was tried before a jury. The jury determined defendant was guilty as charged.
For each conviction, the trial court sentenced defendant to a term of ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, with the sentences to be served consecutive to each other.
Defendant appeals, urging two assignments of error. We affirm both convictions. We note, however, that because defendant received an illegal sentence for the conviction of molestation of a juvenile, we amend his sentence and affirm the sentence as amended.

FACTUAL BACKGROUND
In the summer of 2004, Kathy and Steven Stuart were separated. Steven Stuart resided in Gonzales, and Kathy Stuart resided in Houston with the couple's minor child, S.S.[1] During June 2004, S.S. returned from Houston with Steven Stuart's sister, Laura Stuart, so S.S. could visit with her father. Steven Stuart lived next door to defendant, who was Laura Stuart's ex-husband. Defendant shared his residence with his adult daughter, Sarah Dupont,[2] and her two-year-old son.
During this visit, S.S. frequently stayed at defendant's residence. On July 17, 2004, S.S. returned to her mother's residence in Houston. After being home for several days, S.S. disclosed to her mother that while at defendant's residence, he had kissed her all over her body, had touched her "privates," and had taken photographs of her. After learning that these allegations would have to be reported in the jurisdiction where they occurred, Kathy Stuart drove S.S. to the Ascension Parish Sheriffs Office on July 29, 2004. Kathy Stuart initially spoke with Deputy Michael Johnson, who took down some basic information and referred her to Detective David Cambre of the Juvenile Division.
Detective Cambre obtained a statement from Kathy Stuart and conducted a taped interview with S.S. According to Detective Cambre, S.S. was able to verbally describe what defendant did to her. Detective Cambre also contacted the Office of the Attorney General in order to set up computer surveillance of defendant, which was set up for the morning of August 4, 2004.
The August 4 surveillance did not produce any evidence against defendant. As Detective Cambre was preparing a search warrant for defendant's residence, he received a phone call at approximately 3:15 p.m. from an attorney, who explained he had been retained to represent defendant. Detective Cambre reported to the attorney that the investigation of defendant had not been completed, and they agreed that in the event an arrest warrant was issued, defendant would be allowed to turn himself in to the police. According to Detective Cambre, no one from his office had notified defendant or his family about the investigation.
Detective Cambre completed the search warrant for defendant's residence and obtained a judge's signature. At 4:15 p.m. on August 4, the warrant was served at defendant's residence, but he was not at home. Laura Stuart was at his home, and later, Sarah Dupont arrived.
During the search, the police seized a Sony Mavica digital camera, which was on the counter in the kitchen. S.S.'s statement indicated that defendant had photographed her with a camera that used floppy disks. The police also seized 116 floppy disks, 26 CDs, three rolls of Fuji film, and one memory stick.
Detective Glenn LeBlanc of the Ascension Parish Sheriffs Office, who was accepted by the trial court as an expert in computer forensic examination, examined the disks and CDs seized from defendant's residence. Detective LeBlanc testified that the type of camera seized from defendant's residence, a Sony Mavica, was one of the first digital cameras ever produced and used floppy disks to store images. No images could be stored directly to the camera.
Using special software, Detective LeBlanc recovered four previously deleted images of S.S. relevant to the investigation from a disk identified by the State as State's Exhibit 1. Another image was recovered from a different disk. After reviewing the digital evidence seized, the police did not attempt to locate any more such evidence because defendant had learned of their investigation and was no longer in Ascension Parish. On August 18, 2004, Detective Cambre obtained an arrest warrant for defendant, charging him with the instant offenses. On August 20, 2004, defendant, accompanied by his attorney, turned himself in to the police.
S.S., who was twelve years old at the time of trial, testified that during her June-July 17, 2004 visit to Gonzales, she stayed at defendant's residence the majority of the time. According to S.S., defendant would play games where he would blow on her stomach. Defendant referred to this game as "mad dog" and would also play it with his two-year-old grandson by blowing on his stomach. As S.S. played the game with defendant more often during her stay, he would direct her to raise her shirt all the way up before blowing on her stomach. S.S. testified she was hesitant to do so, but defendant assured her it was all right because they were related.
The more S.S. and defendant played this game, it started to change. S.S. described how defendant would make her take off her clothes so he could look at her genitals. Eventually, defendant began to suck on S.S.'s genitals, kiss her breasts, and kiss her neck. S.S. stated she did not understand what was going on, but defendant assured her everything was all right.
S.S. testified that this behavior would occur in the living room of defendant's residence while Laura Stuart and Sarah Dupont were sitting on the carport, as they regularly did during the evenings when they went outside to smoke. According to S.S., if another adult entered the house, defendant would act like nothing had occurred.
S.S. further testified that defendant made up another game called "superstar," where she would dress up like an adult, using Sarah Dupont's high-heel shoes and a black dress with a slit on the side. S.S. described how defendant would go into the bathroom with her and get her to take off all her clothes, or have her act like she was applying eyeliner before she pretended to go on stage. S.S. testified that defendant wanted her to act as if she were a model. Defendant also videotaped her in the bathroom and photographed her completely undressed. In some of these photographs, S.S. was instructed to keep her legs open, so defendant could see her genitals. Defendant would later show S.S. the pictures that revealed her breasts and her "private parts."
According to S.S., no other adults knew these activities were occurring. S.S. testified that at other times when she was in defendant's vehicle on the way to rent videos, anytime he would come to a stop sign, he would suck on different places on her body.
S.S. testified she taught defendant how to play "dead man awakes" where defendant would lay on the ground, close his eyes, and she would run around as he tried to tag her with his legs. S.S. stated she did not think defendant liked playing this game with her because it had nothing to do with her body parts. Defendant would try to change the game so that when he caught her, he would suck on her body.
According to S.S., these types of things would occur just about every time she was at defendant's residence, and they had begun three or four days after she arrived in Gonzales. S.S. testified she tried to tell her Aunt Laura Stuart, but she did not think her aunt understood.
On cross-examination, S.S. clarified that she never completely undressed while in the living room of defendant's residence, but that defendant would make sure her pants were at her feet, so if someone walked in, she could quickly put them back in place. S.S. testified that defendant made her take off her clothing in the bathroom.
The defense presented testimony from Laura Stuart, who testified that although they returned to Gonzales from Houston to visit S.S.'s father, Steven Stuart's drinking and verbal abuse prompted them to stay at defendant's residence. Laura Stuart denied that S.S. was ever alone with defendant at his residence during this summer 2004 visit. According to Laura Stuart, defendant was working in Lafayette and would leave between 6:00-6:30 a.m. and not return until around 8:00 p.m. Laura Stuart admitted she would go outside to smoke, but denied drinking beer. Moreover, Laura Stuart testified that she and Sarah Dupont would frequently check on Sarah Dupont's son, who was inside. Laura Stuart also testified that S.S. was frequently outside on the carport with her. According to Laura Stuart, she never observed any behavior that would have suggested defendant was acting improperly with S.S., nor did S.S. ever tell her of anything defendant was doing to her.
Sarah Dupont testified on her father's behalf at trial. Sarah Dupont testified that she and her mother would go outside on the carport of her father's residence in the evenings to smoke, but denied they drank beer. According to Sarah Dupont, S.S. was "almost constantly" outside with them in the evenings, and she never saw anything to suggest her father had done the things that S.S. had alleged.
Sarah Dupont testified that when defendant arrived home from work, he always stayed inside and watched television. Sarah Dupont further testified that S.S. would frequently play "dress-up" using Sarah Dupont's black dress, and that Sarah Dupont may have taken the picture recovered from one of defendant's disks seized during the search.
Defendant testified at trial. During July 2004, defendant stated he was working as a control-system designer in Lafayette. Defendant denied he ever molested S.S., denied taking photographs of S.S. undressing or nude, denied taking photographs of S.S. as she pretended to apply make-up, and denied taking photographs of S.S. dressed as an adult in a long, black dress.
Defendant admitted he played a game called "mad dog" with his own grandchild, but denied he played the game with S.S. as she described it. Defendant denied he ever played any games with S.S. when Laura Stuart was not present. Defendant denied ever raising S.S.'s shirt to suck on any part of her body, or pulling S.S.'s pants down and sucking on her genitals. Defendant admitted he drove S.S. to a video store, but denied sucking on any part of her body while in the vehicle.
Defendant claimed a family member told him while he was at work that a warrant had been issued for him, and that was why he contacted his attorney. However, when questioned about the identity of this family member on cross-examination, defendant initially answered "Undisclosed," and then stated, "Wish to remain anonymous," and finally, after being instructed to answer the question by the trial court, he stated he did not remember the person's identity.

SUFFICIENCY OF THE EVIDENCE
In defendant's two assignments of error, he contends that the evidence is insufficient to support his convictions for molestation of a juvenile and pornography involving juveniles.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see La. Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).
The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Forbes, 97-1839, p. 5 (La. App. 1 Cir. 6/29/98), 716 So.2d 424, 427.

Molestation of a Juvenile
The essential elements of the crime of molestation of a juvenile, La. R.S. 14:81.2, as charged in the instant case are:
1. Commission by anyone over the age of seventeen
2. of any lewd or lascivious act
3. upon the person or in the presence of
4. any child under the age of seventeen
5. where there is an age difference of greater than two years between the two persons
6. with the intention of arousing or gratifying the sexual desires of either person
7. by the use of influence by virtue of a position of control or supervision over the juvenile.
La. R.S. 14:81.2(A).
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as defendant's actions or facts depicting the circumstances. State v. Forbes, 97-1839 at pp. 5-6, 716 So.2d at 427.
Viewing the evidence in the light most favorable to the prosecution, we find the evidence is sufficient to support defendant's conviction for molestation of a juvenile beyond a reasonable doubt. In the instant case, the victim's status as a minor and the requisite age differential are not at issue.
S.S.'s testimony established that defendant touched and kissed her breasts after raising her shirt or directing S.S. to raise her shirt. S.S. also testified that defendant touched and "sucked" on her "privates" after having her pull her pants down. Although defendant denied engaging in such behavior and presented testimony from Laura Stuart and Sarah Dupont disputing that he was ever alone with S.S. in his own residence at the time of day S.S. testified these acts regularly occurred, the jury chose to accept S.S.'s testimony and reject the testimony presented by the defense. Thus, a rational trier of fact could have concluded that defendant's behavior toward S.S. constituted lewd and lascivious acts.
Specific intent can be inferred from defendant's actions. See State v. Forbes, 97-1839 at pp. 6-7, 716 So.2d at 427. Clearly, defendant's actions of touching and kissing S.S.'s body, including her genitals, are sufficient to prove he possessed the required specific intent to arouse or gratify his sexual desires.
Finally, the State sufficiently established that defendant accomplished these acts by use of influence by virtue of his position of control and supervision over S.S. S.S. testified that defendant engaged in this type of behavior when she was alone with him in his house as the other adults were outside on the carport, smoking. S.S. also testified that on at least one occasion, defendant engaged in this behavior when she was alone with him in his vehicle as he drove them to the video store. At trial, S.S. explained that despite her apprehensions about defendant's behavior, he frequently assured her that his actions were all right because he was related to her.
The jury's verdict of guilty of molestation of a juvenile indicates that it clearly accepted the testimony of S.S. and rejected the testimony offered by defendant. Although there were some inconsistencies in S.S.'s testimony, the jury obviously did not feel such minor inconsistencies affected the sufficiency of the evidence presented by the State. Defendant's first assignment of error is without merit.

Pornography Involving Juveniles
In challenging the sufficiency of the evidence supporting his conviction for pornography involving juveniles, defendant argues that there are no pictures, videos, or other reproductions of "sexual performances" involving S.S., nor is there any testimony besides S.S.'s that such pictures, videos, or other visual reproductions were created or viewed.
Louisiana Revised Statute 14:81.1 provides in pertinent part:
A. Pornography involving juveniles is any of the following:
(1) The photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen.
(2) The solicitation, promotion, or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving a child under the age of seventeen.
(3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.
(4) The consent of a parent, legal guardian, or custodian of a child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing visually any sexual performance involving the child.
B. For purposes of this Section the following definitions shall apply:
(1) "Sexual performance" means any performance or part thereof that includes sexual conduct involving a child under the age of seventeen.
(2) "Performance" means any play, motion picture, photograph, dance, or other visual presentation.
(3) "Sexual conduct" means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals.
(4) "Promote" means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, prevent, exhibit, or advertise, or to offer or agree to do the same.
In support of this offense, the State introduced five photographs of S.S. that were recovered from disks seized during the search of defendant's residence, State's Exhibits 9 (in globo) and 12. The four photographs comprising State's Exhibit 9 are all images of S.S. retrieved from a seized disk. These photographs had been deleted from the defendant's disks, but were recovered by Detective LeBlanc using special software. One of the photographs, State's Exhibit 12, is an image of S.S. lying on a sofa wearing Sarah Dupont's black dress and black high-heel shoes. Though S.S.'s genitals were not visible in this photograph, she is posed in a provocative manner with her dress pulled up to reveal her upper thighs and part of her naked buttocks.
S.S.'s testimony supports a finding that defendant took other photographs and videotapes of her that qualified as pornography under La. R.S. 14:81.1. Under this statute, pornography involving juveniles includes "the photographing, videotaping, filming, or otherwise reproducing visually of any sexual performance involving a child under the age of seventeen." The statute further defines "sexual performance" as "any performance or part thereof that includes sexual conduct involving a child under the age of seventeen." Included within the definition of "performance" are motion pictures and photographs. According to the statute, one form of "sexual conduct" is "lewd exhibition of the genitals."
In her testimony, S.S. stated that while she and defendant were playing "superstar," he would take pictures of her and videotape her while she was undressed in the bathroom. She testified that he would have her pull the slit of her dress open or sit with her legs open so that he could view and take pictures of her private parts. S.S. explained she would not be wearing any underwear because the defendant did not want her to. S.S. knew that defendant was taking actual pictures of her because he would show them to her after he took them. When she viewed the pictures, she could see her breasts and private parts. It is unclear from S.S.'s testimony whether she was completely nude or whether her clothes were just pulled down to her ankles when these acts were occurring. However, that fact is irrelevant since she unequivocally stated that her privates were visible when defendant was photographing and videotaping her.
The conduct described by S.S. can clearly be classified as a "performance" involving "lewd exhibition of the genitals," which is a form of pornography under La. R.S. 14:81.1. Defendant claims that he did not take any nude pictures of the victim. However, the jury, who was entrusted with the task of weighing the credibility of the witnesses, evidently found the victim to be more credible than defendant. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. State v. Price, 05-2514, p. 6 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 117.
The introduction of State's Exhibit 12, coupled with S.S.'s testimony, which the jury apparently found credible, provided the jury with sufficient evidence to return a verdict of guilty of pornography involving juveniles against defendant. Any rational trier of fact could have concluded that the evidence, when viewed in a light most favorable to the prosecution, supports defendant's conviction beyond a reasonable doubt. Defendant's second assignment of error is without merit.

REVIEW FOR ERROR
In conducting our review for errors under La. Code Crim. P. art. 920(2), we note the trial court erred in sentencing defendant on his conviction for molestation of a juvenile within his control or supervision. In sentencing defendant to a term of ten years at hard labor, the trial court stated that this sentence would be served without benefit of probation, parole, or suspension of sentence. However, the penalty provision of La. R.S. 14:81.2(C) does not include such a restriction on probation, parole, or suspension of sentence. Pursuant to La. Code Crim. P. art. 882(A), which provides that an appellate court may correct an illegal sentence at any time, we amend the sentence to strike and delete the portion of the sentence that provides it shall be served without benefit of parole. See State v. Charles, XXXX-XXXX, pp. 5-6 (La. App. 1 Cir. 12/22/00), 775 So.2d 667, 670, writ denied, XXXX-XXXX (La. 1/4/02), 805 So.2d 1186.
CONVICTIONS AFFIRMED; SENTENCE FOR MOLESTATION OF A JUVENILE AMENDED AND, AS AMENDED, AFFIRMED; SENTENCE FOR PORNOGRAPHY INVOLVING JUVENILES AFFIRMED.
DOWNING, J., dissents and assigns reasons
I dissent in part. I agree with Mr. Dupont's conviction and sentence, as amended, on the charge of molestation of a juvenile. I disagree with his conviction and sentence for pornography involving juveniles and would discharge him as to this matter only.
In support of this offense, the State introduced five photographs of S.S. that were recovered from disks seized during the search of defendant's residence. (State's Exhibits 9 in globo and 12). The four photographs comprising State's Exhibit 9 are all images of S.S. retrieved from a disk seized from defendant's residence. In each photograph, S.S. is fully clothed. None of the photographs in State's Exhibit 9 reflect any type of sexual conduct whatsoever, nor are S.S.'s genitals exposed in any manner. Clearly, these photographs do not satisfy the statutory definition of pornography found in La. R.S. 14:81.1(A) and (B).
State's Exhibit 12 is an image of S.S. lying on a sofa wearing a black dress and black high-heeled shoes that had previously been identified as belonging to Sarah Dupont. The bottom part of the dress is pulled up to reveal the upper portion of S.S.'s legs; however, there is no exposure of S.S.'s genitals in this photograph.[1] Moreover, S.S. is not depicted in State's Exhibit 12 as engaging in actual or simulated sexual intercourse or any other act that would meet the definition of "sexual conduct."
Considering these photographs with the definition of pornography, we cannot say how rational jurors could have concluded that any of these photographs are pornographic within the context of how the legislature has sought to define pornography in La. R.S. 14:81.1(A) and (B). None of the photographs depict any sexual conduct whatsoever, and S.S. is fully clothed in all. Despite the fact that the upper portion of S.S.'s legs are revealed in State's Exhibit 12, her genitals are not exposed.
Because none of these photographs satisfy the statutory definition of pornography, the evidence supporting defendant's conviction for pornography involving juveniles is insufficient. Accordingly, I would reverse Mr. Dupont's conviction and sentence on this count and discharge him on this charge only.
NOTES
[1] S.S. was born December 31, 1993.
[2] Laura Stuart is Sarah Dupont's mother.
[1] Genitalia are defined as the reproductive organs, especially the external sex organs. See Webster's II New Riverside Dictionary 290 (1996).